[Nos. B132502, B138750. Second Dist., Div. Two. Mar. 29, 2001.]

WILLIAM JUN, Plaintiff and Appellant, v.
MICHAEL MYERS, Defendant and Respondent.

**COUNSEL**

Leonard D. Nasatir for Plaintiff and Appellant.

Michael Myers, in pro. per.; and Matthew L. Taylor for Defendant and Respondent.

## OPINION

**TODD, J.**—William Jun purchased inventory and furniture from Michael Myers, a receiver[1] in a civil action to which Jun was not a party. Several months after the purchase, Jun claimed to have discovered the assets he purchased were not as represented. He filed a motion seeking leave to sue receiver either in that action or in a separate lawsuit. The motion was denied. Jun made a subsequent motion to intervene in that action, which motion was also denied. This appeal is a consolidation of Jun's separate appeals from the denial of his motions to sue and to intervene.

Jun contends that: (1) dismissal of the action before receiver's final account and discharge did not operate to terminate the receivership, render the motion to intervene untimely, or deprive the trial court of jurisdiction to permit Jun to sue receiver for claims relating to his conduct as receiver, and (2) the trial court did not have discretion to deprive Jun of the right to sue the receiver by deciding the merits of his claim.

We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

Imperial Bank filed an action against Italian Classics, Inc., seeking to recover on a note and guarantee. The trial court appointed receiver to take possession of Italian Classics's business and assets. Receiver offered to sell Italian Classics's assets to Jun, and an application for court authorization to enter into an agreement to sell "substantially all of the inventory and office furniture and equipment in the Receivership Estate" for $250,000 was granted.

Receiver and Jun then entered into a written agreement for the purchase of the assets that provided: "Buyer understands that the only items included in this sale are those enumerated in the aforementioned Exhibits. . . . [¶] The parties understand that Seller has not made a physical inventory of the equipment and inventory described in Exhibits 2 and 3. Seller believes that these exhibits are substantially correct and describe the items set forth therein. However, he makes no representations concerning the accuracy of these Exhibits, or the value of the item(s) described therein. Buyer and his employees and agents, has [sic] had an opportunity to inspect the assets that are the subject of this agreement, and to satisfy themselves as to their existence, quantity, condition and value." The agreement also provided that: "All assets being transferred pursuant to this Agreement are sold on an 'As

---

[1] Myers is referred to hereafter as receiver.

Is' 'WHERE IS' and 'WITH ALL FAULTS' basis, and no warranty of condition or merchantability, either express or implied, is given by Seller." Jun paid the purchase price and received possession of the goods.

Thereafter, Imperial Bank failed to appear at an order to show cause and the action was dismissed. Receiver had not been discharged.

Jun subsequently made an ex parte application to intervene and vacate the order of dismissal. Accompanying the application was a proposed complaint in intervention which recited that it constituted a demand for rescission, and asserted claims against receiver for restitution after rescission, fraud, negligent misrepresentation and common counts. Jun alleged that Imperial Bank "by and through its agent, . . . orally represented to intervener that the remaining inventory of Italian Classics, Inc. had a landed cost[2] of approximately $750,000[]; . . . Imperial Bank also handed to intervener a letter from [receiver] which stated . . . that the landed cost of the remainder of said inventory was approximately $750,000[] . . . ." He further alleged that receiver represented that the landed cost was $750,000, and that in December of 1998, Jun learned that the landed cost was worth 45 percent less than represented. The trial court denied the application.

About two weeks later, Jun filed the motion to sue, requesting leave to file a separate action against receiver or to sue him in the Imperial Bank action, and to set aside the dismissal of that action to allow him to pursue his claim. The trial court denied the motion to sue on the grounds that the sale had been consummated with the approval of the court, the sale was "as is," the sale resulted in a profit to Jun and Jun failed to demonstrate that he was entitled to sue the receiver in the action or in another proceeding.

Jun then filed the motion to intervene along with a proposed complaint in intervention. This complaint was substantially the same as the complaint in intervention Jun had previously sought to file. In opposition to the motion to intervene, receiver introduced evidence that in response to a lawsuit by Imperial Bank against Jun, Jun cross-complained against the bank and receiver, asserting claims that were essentially the same as those asserted in the complaint in intervention. After demurrers to the cross-complaint and first amended cross-complaint were sustained in that action, Jun dismissed the first amended cross-complaint as to receiver without prejudice.[3] The trial court denied the motion to intervene, finding that it was untimely because

---

[2]The complaint in intervention defined "landed cost" as the cost of the goods to Italian Classics, including shipping and import costs.

[3]On appeal, receiver requests that we take judicial notice of numerous pleadings and documents related to Imperial Bank's action against Jun and Jun's cross-complaint against

the action had been dismissed and that there was no showing of any exigent circumstance to justify reopening the case.

Jun filed timely appeals of the court's orders denying the motion to sue and the motion to intervene.

## APPEALABILITY

■ Receiver contends that "[c]laims against a Receiver are not properly appealed until after the trial court has discharged the Receiver and approved his final report" because the "[a]ppellant may still make a claim in this action against the receivership estate at the time the Receiver seeks to be discharged." Receiver relies on *Rochat v. Gee* (1891) 91 Cal. 355 [27 P. 670] (*Rochat*); *Kinoshita v. Horio* (1986) 186 Cal.App.3d 959 [231 Cal.Rptr. 241] (*Kinoshita*); *Schreiber v. Ditch Road Investors* (1980) 105 Cal.App.3d 675 [164 Cal.Rptr. 633] (*Schreiber*); and *Aviation Brake Systems, Ltd. v. Voorhis* (1982) 133 Cal.App.3d 230 [183 Cal.Rptr. 766] (*Aviation Brake Systems*), in support of his contention. None of these cases is on point.

In *Rochat,* the plaintiff filed a dissolution of partnership action in which a receiver was appointed to take charge and dispose of partnership assets. After the defendant answered, the plaintiff filed a "written abandonment of the cause," but no judgment of dismissal was ever entered. (*Rochat, supra,* 91 Cal. at p. 356.) The trial court then directed the receiver to file an account, which was filed and to which the defendant filed written objections. The trial court approved the accounting and the defendant appealed.

The Court of Appeal dismissed the appeal from the order approving the account, finding it could only be reviewed on appeal from the final judgment, which had not been entered. The court observed that while case authority permitted a receiver to appeal directly from an order disallowing a final account before judgment, the account at issue in *Rochat* was not final because the receiver was still in possession of the firm's assets and acting on its behalf.

*Rochat* simply held that a *party* to a receivership action cannot appeal from an order approving a receiver's interim accounting, but must wait until

receiver in order to "support . . . facts set forth" in respondent's brief. Since this appeal relates solely to Jun's right to sue receiver and not to the merits of that suit, we find these documents irrelevant to the dispositive point on appeal (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73]), and therefore deny the request.

the final account has been approved or a final judgment entered. *Rochat* has no application to the facts presented here.[4]

In *Kinoshita*, the Court of Appeal dismissed an appeal by a party to a partnership dispute from a judgment directing the dissolution of the partnership and sale of its assets. In doing so, the Court of Appeal characterized the judgment as interlocutory because it did not set out a complete formula for distribution of receivership proceeds. As such, the court concluded the judgment did not terminate the proceeding by completely disposing of the matter in controversy and was therefore not appealable.

Receiver also relies on *Schreiber* in asserting that (in receiver's words) "[i]t is the order settling the account of the Receiver and discharging him that is the final appealable order in this case." But *Schreiber* also states that "[a]n order dismissing a complaint in intervention is final as to the intervener and hence is appealable." (*Schreiber, supra,* 105 Cal.App.3d at p. 677, fn. 1.) In *Schreiber*, the appeal challenged the receiver's accounting and the manner in which he handled receivership assets. This appeal does not challenge receiver's handling of receivership property, but rather the trial court's refusal to permit Jun to sue receiver for his conduct with regard to the sale to Jun.

*Aviation Brake Systems* is also inapplicable here since that case dealt with the collateral estoppel impact of an order settling the account of a receiver on a subsequent lawsuit filed against him. (*Aviation Brake Systems, supra,* 133 Cal.App.3d at p. 234.) There is no collateral estoppel issue here because no order settling the account of receiver has yet been entered.

"It is generally held . . . that only parties of record may appeal; consequently one who is denied the right to intervene in an action ordinarily may not appeal from a judgment subsequently entered in the case. [Citations.] Instead, he may appeal from the order denying intervention." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 736 [97 Cal.Rptr. 385, 488 P.2d 953].) The denial of Jun's motion to intervene is therefore appealable.

Furthermore, where action by a party is "in essence an attempt to intervene and to become a party to the proceeding," it is treated as if it were a motion to intervene and is appealable. (*In re Veterans' Industries, Inc.* (1970) 8 Cal.App.3d 902, 916 [88 Cal.Rptr. 303] [superior court order striking objection to a disposition of assets of dissolving nonprofit corporations with

---

[4]California Rules of Court, rule 353(d) provides that: "Before a receiver's account is presented for settlement, 10 days' written notice shall be given to all parties who have appeared in the proceeding." There is no provision for a nonparty to the litigation to receive notice of the final accounting in order to file objections to it.

cross-complaint is in essence denial of a motion to intervene].) The motion to sue, requesting alternatively that Jun be allowed to file a separate suit against receiver or sue in the Imperial Bank action was, "in essence an attempt to intervene and to become a party to the proceeding." (*Ibid.*) The denial of this motion is therefore also appealable. The effect of the denial of both motions was to finally foreclose Jun's suit against receiver.

## DISCUSSION

The trial court denied Jun's motion to sue by passing judgment on the merits of his claim. It concluded that receiver's sale of inventory and furniture to him was "as is" and resulted in profit to him, and that Jun therefore failed to demonstrate that he was entitled to sue receiver. The trial court denied the motion to intervene as untimely because the Imperial Bank action had already been dismissed.

Jun contends the trial court improperly denied the motion to sue. He argues that although the court had discretion to permit an independent suit or to require that his claim be asserted in the Imperial Bank action, it had no discretion to reject it on the merits. He also claims that dismissal of the action did not render his motion to intervene untimely or deprive him of the right to sue receiver because receiver had not yet been discharged.

Receiver, on the other hand, contends that the rule requiring court approval to sue a receiver, which is designed to protect the receiver from unnecessary litigation, permits a court to determine if there is any merit to a claim against the receiver and to preclude an unmeritorious claim from being pursued. Receiver argues that Jun's claim lacks merit and the trial court correctly refused to allow it to be asserted either in an independent action or in the receivership proceeding.

### A. *Dismissal of the Action Did Not Preclude Suit Against the Receiver.*

Over a hundred years ago, the Supreme Court established that a judgment dismissing a lawsuit, even before the issuance of the summons or appearance of any defendant, did not deprive the trial court of jurisdiction to settle the account of a court appointed receiver. (*Pacific Bank v. Madera Fruit etc. Co.* (1899) 124 Cal. 525 [57 P. 462].) Quoting Beach on Receivers, the court stated: " 'The end of the suit, its final adjudication, gives cause for the discharge of the receiver, but does not, ipso facto, effect his discharge, which results only from an order or decree of court so directing. . . . The dismissal of the action does not discharge the receiver from accountability to the court which appointed him.' " (*Id.* at p. 526, italics omitted.) The trial

court does not lose jurisdiction to proceed with the account of the receiver because of a dismissal. "The dismissal of the case was the end of it as between the parties, but we think the court still retained the power to settle the accounts of its receiver and to direct the application of the funds in his hands." (*Id.* at p. 527; see also *Hanno v. Superior Court* (1939) 30 Cal.App.2d 639 [87 P.2d 50].)

Here, although the action had been dismissed by the time Jun filed his two motions, receiver had not made a final accounting or been discharged. After discharge the receiver is no longer a proper party to an action on his conduct in his official capacity. (*Brockway etc. Co. v. County of Placer* (1954) 124 Cal.App.2d 371, 375 [268 P.2d 524].) Because any recovery against the receiver is paid from the receivership estate and thus affects the final accounting,[5] until discharge, actions challenging the receiver's conduct during the receivership may still be pursued. Therefore, the motion to sue and the motion to intervene were timely filed despite the prior dismissal of the action.

B. *The Trial Court Erred in Denying Jun's Request to Sue the Receiver in the Action or in a Separate Suit.*

In the seminal case of *De Forrest v. Coffey* (1908) 154 Cal. 444 [98 P. 27] (*De Forrest*) a receiver was appointed for an insolvent bank. While the insolvency action was pending, the petitioner made a motion for an order permitting him to file an independent action to compel the receiver to return funds petitioner claimed were accepted for deposit by the bank after the bank knew it was insolvent. He did not seek to intervene in the insolvency proceedings. The motion to file suit was denied, and petitioner sought a writ of mandate to compel the trial court to grant him leave to file the independent action.

The Supreme Court concluded that the petitioner had no absolute right to file a separate action against the receiver. It stated: "The only proposition with which we are concerned is, did the court have the discretion to require the petitioner to litigate his claim, whether legal or equitable, by intervening in the proceeding in which the receiver was appointed . . . ." (*De Forrest, supra,* 154 Cal. at p. 449.) The court answered the question by stating: "[W]hether the court will permit, upon application, an independent suit to be brought relative to the property in the hands of the receiver, or will compel intervention in the proceeding in which the receiver is appointed, is a matter

---

[5] A receiver is liable, in his official capacity only, for negligence in the performance of his authorized duties, and any recovery is a charge upon the estate in receivership. (*Chiesur v. Superior Court* (1946) 76 Cal.App.2d 198, 201 [172 P.2d 763].)

for its discretion. It is not required to assume jurisdiction of all controversies to which the receiver may become a party, but may upon application permit them to be determined in some other competent tribunal. . . . When the court cannot afford the same relief in intervention as a claimant would be entitled to in an independent action, or where by virtue of some statutory or constitutional provision a particular kind of action must be brought in some jurisdiction other than where the original special proceeding is pending, the court will undoubtedly grant leave to bring it, and it would be an abuse of discretion not to do so." (*Id.* at pp. 449-450; see also *Ostrowski v. Miller* (1964) 226 Cal.App.2d 79, 84 [37 Cal.Rptr. 790].)

Contrary to receiver's contention that *De Forrest* "suggests that the court may assess the merits of the proposed lawsuit at the time a motion is filed for leave to sue a receiver," the only discretion *De Forrest* considered was whether to permit an independent suit against the receiver or compel the claim to be litigated in the receivership action. It did not suggest that the trial court had jurisdiction to decide whether the claim could be presented at all.

To prevent a party from filing a separate suit against a receiver as well as from intervening in the receivership action is to deprive him of access to the courts to pursue his claim. Denial of access to the courts implicates due process. (*Payne v. Superior Court* (1976) 17 Cal.3d 908, 914 [132 Cal.Rptr. 405, 553 P.2d 565]; *Boddie v. Connecticut* (1971) 401 U.S. 371, 377 [91 S.Ct. 780, 785-786, 28 L.Ed.2d 113].) Furthermore, even if a third party could resort to the uncertain procedure of filing an objection to the final accounting by the receiver, it is an inadequate substitute for the right to bring suit. As stated in *De Forrest,* "[i]n determining the right of the petitioner under the intervention, the court proceeds under the same rules and grants him the same relief as if he were the plaintiff in an independent suit, and the same right of appeal is preserved to him. He is deprived of no right in the intervention which he is guaranteed under the law in an independent action, should he have been permitted to bring one . . . ." (*De Forrest, supra,* 154 Cal. at pp. 453-454.)

The trial court had discretion to determine whether or not to require Jun to assert his claim against receiver in the action or in a separate lawsuit. It did not have discretion to deny both the motion to sue and the motion to intervene by summarily determining that Jun's claim lacked merit.

## DISPOSITION

The order denying the motion to sue and the order denying the motion to intervene are reversed. The matter is remanded to the trial court to determine

whether to permit an independent action by Jun or require him to intervene in the underlying action. Jun is awarded his costs on appeal.

Nott, Acting P. J., and Cooper, J., concurred.