*Supp. 12 Opinion
THE COURT.*
I.
INTRODUCTION
On March 11, 2008, the Riverside County District Attorney (District Attorney) filed a misdemeanor complaint charging defendant Guadalupe Flores with one count of simple battery (Pen. Code,* [1] § 242), one count of spousal battery (§ 243, subd. (e)), and one count of trespass (§ 602, subd. (m)). At Flores’s continued arraignment on April 7, 2008, she pleaded not guilty and remained free on bond. Because Flores was not in custody, her trial was required to commence within 45 days, on May 22, 2008. (§ 1382, subd. (a)(3).)
The minutes of a trial readiness conference on May 5, 2008, indicate trial was set for May 22, 2008. At a May 12, 2008 trial readiness conference, the matter was assigned for jury trial to the master calendar department at the Southwest Justice Center. The minutes show Flores waived time for the May 22, 2008 trial date (plus the 10-day grace period), and the parties stipulated to the last day for trial on June 2, 2008.
On May 22, 2008, the parties appeared before Judge Freer in the Southwest master calendar department and announced ready for trial. On his own motion, Judge Freer trailed the matter until May 29, 2008, “due to courtroom unavailability.” The parties provided a time estimate of three days for trial. Under the “previous time waiver,” the last day for trial to commence remained June 2, 2008.
The District Attorney filed a motion to trail the matter within the 10-day grace period, and on May 29, 2008, Judge Freer granted the motion and assigned the matter to the master calendar department at the Hall of Justice in Riverside. The matter was again trailed until June 2, 2008.
On June 2, 2008, Judge Hernandez in the Riverside master calendar department called the matter. Judge Hernandez addressed counsel: “I just got off the phone. I couldn’t find any courtrooms, so any suggestions?” The *Supp. 13 prosecutor inquired whether there were any available criminal courtrooms, then presented the court with a list of questions. Judge Hernandez addressed the apparent concern by the prosecutor that the court might “have some hidden courtroom” as follows: “I have checked out every one around through the entire county. All criminal courtrooms are available to us, but they’re all engaged in jury trials. A number of civil trial courtrooms are also available to us. They are all engaged in criminal trials. We do have one for you. Are you going to let one of your criminal trials go to Judge Tranbarger?”
The prosecutor responded, “If the Court is going to assign us out to Tranbarger, I believe we will be filing a paper[2] in regards to that.” Instead, the prosecutor suggested that Judge Tranbarger be assigned to the master calendar “to free up yourself as another trial court,” but Judge Hernandez noted that “your side filed 170.6s against him as a calendar judge too.” The prosecutor could not remember whether a peremptory challenge could be filed against a calendar judge who is “not making any legal decisions,” but said he would check into it. Judge Hernandez responded, “If he’s okay to be in calendar court, I’m putting him in [Department] 51 starting tomorrow.”
Moving back to the prosecutor’s list, Judge Hernandez made findings about the unavailability of courtrooms throughout the entire court:
“So there are some civil courtrooms available, but one of them is Judge Tranbarger, [whom] the D.A. regularly papers a hundred percent of the time. The other one is our Hawthorne judges. We have three civil judges doing civil trials at the Hawthorne School. They were given to us by AOC [the Administrative Office of the Courts], just to do civil. That was the condition on which we got them, and the security at Hawthorne School is inadequate to assure the safety of jurors, witnesses, attorneys, court staff, or the public.
“We will not use family law courtrooms. They have no jury boxes, and even the ones that do, it’s not appropriate. The judicial officers that are assigned to family law have huge [caseloads]. A significant part of that [caseload] is protecting children and spouses. Emergency protective orders and emergency hearings are frequent.
“We will not use probate or guardianship courts. They protect the mentally disadvantaged who are constantly the targets of the greedy. They also protect children who are without parents.
*Supp. 14 “We will not use juvenile court. Most of them have no jury boxes and the judicial officers assigned to juvenile court have huge [caseloads]. The Juvenile [section] 300 [of the] Welfare and Institutions Code calendar protects children who have been removed from their homes due to neglect or abuse. The Juvenile [section] 600 [of the] Welfare and Institutions Code calendar takes care of crimes committed by juveniles. The [section] 600 cases have strict time guidelines and reassigning a judicial officer from [juvenile court] would create a public safety issue, since juveniles who have committed crimes would have to be released.”
The prosecutor then asked Judge Hernandez a series of questions from his list regarding potentially available courtrooms:
“[Prosecutor]: [A]re there any cases that have been sent to criminal trial courts already that still have statutory trailing time that could be taken out and a new case[] taken in?
“THE COURT: No.
“[Prosecutor]: Are any P.P.C.D.[3] courts available? I know that in the P.P.C.D. court here, Judge Moran hears trials in the afternoon, but I know that neither the Southwest Court P.P.C.D. nor the Indio Court P.P.C.D. hears trials in the afternoon. Are either one of those available?
“THE COURT: I did send one out to Southwest.
“[Prosecutor]: So that still leaves Indio.
“THE COURT: The Indio one is not available.
“[Prosecutor]: Okay. Is there any criminal courtroom that could take a short misdemeanor matter, such as mental health or drug court?
“THE COURT: No.
“[Prosecutor]: Okay. Is there any criminal or civil judge that can be recalled from training or vacation to take a short trial matter?
“THE COURT: No. Don’t even go there. You never call D.A.s. We just went over this last week. The answer is no.
*Supp. 15 “[Prosecutor]: Okay. I know the Court—when it comes to that, the Court still says that vacations are not a matter of good cause for continuances. It’s also the same with regards to—
“THE COURT: There’s a lot of mandatory trainings that judges have to go to. We have to go to family law training—there’s all kinds that’s mandatory, so education is something that’s required and not something we’re going to cut short.
“[Prosecutor]: Can a pro tern take over a calendar assignment?
“THE COURT: We already use pro terns. We can’t find enough.
“[Prosecutor]: Can the presiding judge temporarily handle a calendar assignment to free up a judge?
“THE COURT: No, he’s not available.
“[Prosecutor]: And has the court notified the presiding judge and/or the [Judicial Council] to request a visiting judge?
“THE COURT: Yes.”
Finally, the prosecutor asked Judge Hernandez whether “the Court has done everything possible and diverted all civil resources to criminal matters,” to which Judge Hernandez answered, “Yes.” At that, the prosecutor stated, “the People are asserting there is good cause to continue this case beyond a statutory period and object to doing anything short of that.”
When the prosecutor could not cite any authority in support of his oral motion, Judge Hernandez stated: “The one and only case on that topic says that if it’s an unusual situation, the Court could create a continuance past the 60-day or whatever the last day is, but we don’t have an unusual situation. We have the typical situation of too many cases for not enough courtrooms. It’s not a natural disaster, it’s not an earthquake, it’s not a tornado, so we’re not going to do that.” Having denied the continuance request, Judge Hernandez ordered the parties to return the next day.
The next day Flores filed a motion to dismiss for violation of her speedy trial rights under section 1382. When Judge Hernandez called the matter, he summed up the previous day’s hearing: “[J]ust to recap: Yesterday, we didn’t *Supp. 16 have enough courtrooms. We’ve done everything, except for the one case, sent out—which was that one case that was on the last day. So, we sent all this yesterday. And just to reiterate, we’re not going to use family law, probate, or Hawthorne civil courtrooms where there’s no security. [][] Every criminal judge and civil judge that was available was in a lengthy trial, and nobody else was available.”
In opposition to the motion to dismiss, the prosecutor stated his position, “that the three judges that are handling civil matters, solely, that are at the Hawthorne [Sjchool, that there is no statute that says that they should handle civil matters, solely, that they should have been taken to fill a courtroom here, if there was an empty courtroom.”
Judge Hernandez repeated his assertion from the previous day that the Administrative Office of the Courts established the courtrooms at the Hawthorne School “to use for civil only,” and that Hawthorne “has no security, so it would be unsafe for attorneys and witnesses, and so we’re not going to use Hawthorne.” Judge Hernandez also rejected the prosecutor’s argument that judges could be reassigned from Hawthorne to secure courtrooms because “it would be interrupting a civil jury trial, and we promised Judicial Coun[cil] we wouldn’t do that.”
Therefore, Judge Hernandez dismissed the case. The minutes state, “No courtrooms [were] available on [the] last day of trial. . . .”
The People appeal from the dismissal and from denial of their request for a continuance. According to the District Attorney, Judge Hernandez abused his discretion by not considering the use of noncriminal courtrooms and judges, in violation of the “common sense” meaning of section 1050, subdivision (a), which mandates that criminal matters be given precedence over “civil matters or proceedings.” Because Judge Hernandez improperly concluded there were no available courtrooms or judges, the failure to bring Flores to trial on June 2, 2008, was caused by court mismanagement, and the District Attorney was prevented from arguing there was “good cause” for a brief continuance pursuant to section 1382. Finally, the District Attorney criticizes the recent decision in People v. Cole (2008) 165 Cal.App.4th Supp. 1 [82 Cal.Rptr.3d 699] (Cole), which affirmed the dismissal of two misdemeanor prosecutions in the Riverside Superior Court under similar circumstances.
In her brief,[4] Flores mostly addresses the question of whether dismissal was mandated under section 1382 because any continuance beyond the 10-day grace period would have violated her statutory speedy trial rights.
*Supp. 17 We conclude that under the circumstances, section 1050, subdivision (a), did not mandate that Flores’s trial be granted precedence over noncriminal matters. Because the reasons for the unavailability of courtrooms was not an emergency or one-time event, but an ongoing condition plaguing the Riverside Superior Court, the trial court did not abuse its discretion by denying the request for a continuance by the District Attorney. Therefore, the dismissal was not an abuse of discretion.
II.
DISCUSSION
A. Standard of Review
The parties disagree on the applicable standard of review. The District Attorney concedes that, generally speaking, a trial court’s determination that good cause does or does not exist to continue a criminal trial beyond the statutory period is reviewed for abuse of discretion. (See Baustert v. Superior Court (2005) 129 Cal.App.4th 1269, 1275 [29 Cal.Rptr.3d 208] (Baustert).) However, because Judge Hernandez allegedly committed “errors of law” based on uncontradicted facts, the District Attorney argues the appropriate standard is independent review. (See People v. Superior Court (Ferguson) (2005) 132 Cal.App.4th 1525, 1529 [34 Cal.Rptr.3d 481].)
We agree with Flores that the rulings being challenged were discretionary, so the appropriate standard of review is abuse of discretion. “ ‘The abuse of discretion standard is used in many other contexts and reflects the trial court’s superior ability to consider and weigh the myriad factors that are relevant to the decision at hand. A trial court will not be found to have abused its discretion unless it “exercised its discretion in an arbitrary, capricious, or patently absurd manner that results in a manifest miscarriage of justice.” ’ [Citation.]” (People v. Lancaster (2007) 41 Cal.4th 50, 71 [58 Cal.Rptr.3d 608, 158 P.3d 157].)
*Supp. 18 B. Section 1050 Did Not Mandate That Precedence Be Given to Flores’s Trial over Other Noncriminal Matters Under the Circumstances of This Case
We begin, as we must, with the operative statutory language. Section 1050, subdivision (a), states in relevant part: “The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time. To this end, the Legislature finds that the criminal courts are becoming increasingly congested with resulting adverse consequences to the welfare of the people and the defendant. Excessive continuances contribute substantially to this congestion and cause substantial hardship to victims and other witnesses. Continuances also lead to longer periods of presentence confinement for those defendants in custody and the concomitant overcrowding and increased expenses of local jails. It is therefore recognized that the people, the defendant, and the victims and other witnesses have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial officers and of all counsel, both for the prosecution and the defense, to expedite these proceedings to the greatest degree that is consistent with the ends of justice. In accordance with this policy, criminal cases shall be given precedence over, and set for trial and heard without regard to the pendency of, any civil matters or proceedings.”
As the District Attorney points out, there are no published decisions definitively interpreting the phrase “civil matters or proceedings” in section 1050, subdivision (a). The District Attorney criticizes the opinion in Cole, supra, 165 Cal.App.4th Supp. 1, for not squarely defining that phrase, and for “spen[ding] numerous paragraphs attempting to define ‘remedies,’ ‘actions,’ and ‘special proceedings’ without any apparent relation to the term ‘civil matters or proceedings.’ ”[5]
We have found no other statute in any California code using the exact phrase “civil matters or proceedings,” or any definitive judicial interpretations of it. Therefore, we must attempt to tease out the definition of “civil matters or proceedings” from the Code of Civil Procedure, which binds the terms “civil” and “criminal” to the distinctions between remedies.
i. What Is the Meaning of “Civil Matters or Proceedings”?
“Judicial remedies are divided into two classes: actions and special proceedings. (Code Civ. Proc., § 21.) ‘An action is an ordinary proceeding in *Supp. 19 a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.’ (Code Civ. Proc., § 22.) ‘Every other remedy is a special proceeding.’ (Code Civ. Proc., § 23.)” (Bagration v. Superior Court (2003) 110 Cal.App.4th 1677, 1684-1685 [3 Cal.Rptr.3d 292], fn. omitted (Bagration).) “ ‘Actions are of two kinds: [][] 1. Civil; and HQ 2. Criminal.’ (Code Civ. Proc., § 24.)” (Bagration, at p. 1684, fn. 6.)
“With respect to civil actions, ‘an “action” means the same thing as a “suit.” [Citation.]’ [Citations.]” (People v. Yartz (2005) 37 Cal.4th 529, 536 [36 Cal.Rptr.3d 328, 123 P.3d 604] (Yartz).) Civil actions arise from, and are meant to remedy wrongs relating to, contractual or legal obligations and injuries to the person or to property. (Code Civ. Proc., §§ 25-29.) “A civil action is prosecuted by one party against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong.” (Id., § 30.) Dissolution of marriage is considered a civil action. (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 62, p. 134.)
Special proceedings of a “civil nature” are legion, and often do not fall into the commonplace definition of a “civil” matter. (See Bagration, supra, 110 Cal.App.4th at p. 1685, fn. 7.) For our purposes, it is pertinent to note that most probate, adoption and conservatorship proceedings are considered special proceedings of a “civil nature.” (See 3 Witkin, Cal. Procedure, supra, Actions, § 65, pp. 136-140.) Proceedings to commit dangerous individuals, such as sexually violent predators, are also considered special proceedings of a civil nature. (See Yartz, supra, 37 Cal.4th at p. 536.) The authorities differ on whether juvenile proceedings (dependency and delinquency) are civil actions or special proceedings of a civil nature (compare Rinaker v. Superior Court (1998) 62 Cal.App.4th 155, 164 [74 Cal.Rptr.2d 464] (Rinaker) [civil actions] with 3 Witkin, Cal. Procedure, supra, Actions, § 65, pp. 139-140 [special proceedings]), but the distinction is academic for our purposes.[6]
Finally, criminal actions are defined in the Penal Code. (Code Civ. Proc., §31; Rinaker, supra, 62 Cal.App.4th at p. 164.) A “criminal action” is a “proceeding by which a party charged with a public offense is accused and brought to trial and punishment” (§ 683), and “is prosecuted in the name of *Supp. 20 the people of the State of California, as a party, against the person charged with the offense” (§684). Except in limited circumstances, the district attorney prosecutes criminal actions. (Gov. Code, § 26500.)
From the foregoing, we assume for purposes of this decision that the phrase “civil matters or proceedings” in section 1050, subdivision (a), is broad indeed, and means any civil action or special proceeding of a civil nature that is not clearly a criminal action.[7] Although we come to a somewhat more definite conclusion than the court in Cole, ultimately we agree “that a precise definition is unnecessary . . . .” (Cole, supra, 165 Cal.App.4th at p. Supp. 14.)
The dispositive question before us is not what classes of actions or proceedings must give way to criminal matters, but what is the scope of the precedence mandated by section 1050?
ii. How Much Criminal Trial Precedence Does Section 1050 Mandate
On its own terms, and in conformity with long-standing judicial interpretation, section 1050 “is directory only . . . .” (§ 1050, subd. (Ɩ), italics added; see Malengo v. Municipal Court (1961) 56 Cal.2d 813, 816 [17 Cal.Rptr. 10, 366 P.2d 453]; People v. Marshall (1930) 209 Cal. 540, 546 [289 P. 629]; Ray v. Superior Court (1929) 208 Cal. 357, 359 [281 P. 391]; Mendez v. Superior Court (2008) 162 Cal.App.4th 827, 835 *Supp. 21 [76 Cal.Rptr.3d 538]; Baustert, supra, 129 Cal.App.4th at p. 1279 & fn. 6; People v. Henderson (2004) 115 Cal.App.4th 922, 934 [9 Cal.Rptr.3d 655]; People v. Ferguson (1990) 218 Cal.App.3d 1173, 1181 [267 Cal.Rptr. 528]; People v. Alvarez (1989) 208 Cal.App.3d 567, 577 [256 Cal.Rptr. 289]; People v. Rubaum (1980) 110 Cal.App.3d 930, 935 [168 Cal.Rptr. 291]; People v. Session (1960) 185 Cal.App.2d 684, 686 [8 Cal.Rptr. 492]; Zamloch v. Municipal Court (1951) 106 Cal.App.2d 260, 263 [235 P.2d 25] (Zamloch); People v. Perea (1929) 96 Cal.Rptr. 183, 185 [273 P. 836], disapproved on another ground in People v. Wilson (1963) 60 Cal.2d 139, 152 [32 Cal.Rptr. 44, 383 P.2d 452] (Wilson); People v. Flores (1978) 90 Cal.App.3d Supp. 1, 9 [152 Cal.Rptr. 896]; People v. Dudley (1967) 250 Cal.App.2d Supp. 955, 960 [58 Cal.Rptr. 557], disapproved on another ground in Pryor v. Municipal Court (1975) 25 Cal.3d 238, 257, fn. 13 [158 Cal.Rptr. 330, 599 P.2d 636].)
As the courts have recognized, “The provisions of Penal Code section 1050 ‘merely establish a policy [citation]; are not absolute [citation]; and do not require that criminal proceedings be given [precedence] over civil proceedings regardless of the circumstances.’ ” (People v. Carlson (1977) 76 Cal.App.3d 112, 115 [142 Cal.Rptr. 638], italics added, quoting People v. McFarland (1962) 209 Cal.App.2d 772, 777 [26 Cal.Rptr. 596].) Indeed, as our Supreme Court stated more than 50 years ago: “The precedence to which criminal cases are entitled is not of such an absolute and overriding character that the system of having separate departments for civil and criminal matters must be abandoned.” (People v. Osslo (1958) 50 Cal.2d 75, 106 [323 P.2d 397] (Osslo).)
This means a trial court need not always and automatically bump civil matters in a dedicated department to accommodate criminal matters and avoid a dismissal.[8] As one court made clear almost 30 years ago, ultimately the problem of insufficient resources to try criminal cases must be solved by the Legislature: “We appreciate the problems of the Ventura County Superior Court and others in the State of California in attempting to meet a burgeoning criminal caseload while also accommodating a civil calendar and, particularly, those civil cases imminently facing the five-year mandatory dismissal provision of Code of Civil Procedure section 581. Section 1382 is a creature of the Legislature. It is therefore incumbent upon the Legislature to provide the financial support necessary to meet the requirements it sets.” (Perez v. Superior Court (1980) 111 Cal.App.3d 994, 1000-1001 [169 Cal.Rptr. 45], italics added.)
*Supp. 22 Moreover, it must be remembered that the provision in section 1050, subdivision (a), which mandates precedence of criminal matters is immediately preceded by the following: “It is therefore recognized that the people, the defendant, and the victims and other witnesses have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial officers and of all counsel, both for the prosecution and the defense, to expedite these proceedings to the greatest degree that is consistent with the ends of justice.” (§ 1050, subd. (a), italics added; see Cole, supra, 165 Cal.App.4th at p. Supp. 14.)
Accordingly, a trial court must grant precedence to criminal cases when doing so is just, and by definition a trial court does not abuse its discretion when it refuses to grant a precedence that would result in injustice. (Cf. Little v. Superior Court (1980) 110 Cal.App.3d 667, 671 [168 Cal.Rptr. 72] [“. . . the legislative policy in favor of prompt disposition of criminal cases, however commendable, must not be permitted to transcend any of the basic elements of due process of law . . .”].) Therefore, we agree with Cole that “whether a particular criminal case takes precedence over civil matters is within the court’s discretion,” taking into consideration “the circumstances and the ends of justice . . . .” (Cole, supra, 165 Cal.App.4th at p. Supp. 15.)
In Cole, as in this case, the trial court concluded that the work performed by nontraditional civil courts such as family, probate and juvenile courts is extremely important and should not under all circumstances make way for criminal matters. “[T]he trial court was entitled to exercise, and did exercise, its discretion in a manner consistent with the policy and objectives of section 1050, subdivision (a). It considered all relevant circumstances, including the welfare of the citizens of the State of California. It indicated that separate from its legal interpretation of the term ‘civil,’ its decision was based on its finding that traditional civil courtrooms were already exclusively devoted to criminal trials, that the work done by the family, probate, traffic, small claims and juvenile courts was of great importance to the community, and that depriving the community of these remaining judicial services would be highly detrimental to its citizens. Because the policy of criminal case precedence expressed in section 1050, subdivision (a), is based on the welfare of the citizens of the State of California, this is a valid and relevant consideration in determining whether a particular criminal case should receive precedence.” (Cole, supra, 165 Cal.App.4th at p. Supp. 16.)
Circumstances in the Riverside Superior Court have changed somewhat since Cole. Whereas before, a very limited number of traditional civil lawsuits were taking place, more are now taking place at the Hawthorne School. Therefore, Cole is not entirely on all fours with this case, and we revisit the issue.
*Supp. 23 The record shows the Riverside Superior Court has already given extraordinary precedence to criminal trials over traditional civil matters, and still does not have the available[9] resources to try all criminal cases in a timely fashion. (See, e.g., Arreola v. Municipal Court (1983) 139 Cal.App.3d 108, 113, fn. 4 [188 Cal.Rptr. 529].) The question then becomes whether giving additional precedence over both traditional and nontraditional civil matters would cause injustice.
The courts have held that “[d]enial of access to the courts implicates due process.” (Jun v. Myers (2001) 88 Cal.App.4th 117, 125 [105 Cal.Rptr.2d 537], citing Payne v. Superior Court (1976) 17 Cal.3d 908, 914 [132 Cal.Rptr. 405, 553 P.2d 565], Boddie v. Connecticut (1971) 401 U.S. 371, 377 [28 L.Ed.2d 113, 91 S.Ct. 780].) “That our citizens have access to their civil courts is not an evil to be regretted; rather, it is an attribute of our system of justice in which we ought to take pride.” (Zauderer v. Office of Disciplinary Counsel (1985) 471 U.S. 626, 643 [85 L.Ed.2d 652, 105 S.Ct. 2265].)
As our Supreme Court has noted in a different context, access to the civil courts is a fundamental pillar of our democracy: “ ‘Few liberties in America have been more zealously guarded than the right to protect one’s property in a court of law. This nation has long realized that none of our freedoms would be secure if any person could be deprived of his possessions without an opportunity to defend them “ ‘at a meaningful time and in a meaningful manner.’ ” [Citation.] In a variety of contexts, the right of access to the courts has been reaffirmed and strengthened throughout our 200-year history.’ [Citation.] Our concern with protecting free access to the courts has led us to limit various torts, such as malicious prosecution, that are based upon conduct related to litigation. [Citation.] ‘Obviously if the bringing of a colorable claim were actionable, tort law would inhibit free access to the courts and impair our society’s commitment to the peaceful, judicial resolution of differences.’ [Citation.] This right of access extends to the constitutional right to petition administrative tribunals. [Citation.]” (California *Supp. 24 Teachers Assn. v. State of California (1999) 20 Cal.4th 327, 335 [84 Cal.Rptr.2d 425, 975 P.2d 622], italics added.)
The same concern for meaningful access of a community to the civil courts should govern the interpretation of section 1050. (See Osslo, supra, 50 Cal.2d at p. 106.)
To repeat, only recently, with the opening of three courtrooms at the Hawthorne School, have traditional civil trials taken place in any significant numbers. In other words, the overall situation remains essentially the same as it did in Cole—criminal trials are still given priority over traditional civil lawsuits, and almost all traditional civil courtrooms and judges are only conducting criminal trials.
We therefore disagree with the District Attorney’s position that even further precedence must be granted to criminal matters. Conducting criminal trials at Hawthorne, temporarily assigning the judges currently assigned to Hawthorne to secure courtrooms at other facilities, or forcing family and probate departments to conduct criminal trials,[10] would simply not be “consistent with the ends of justice,” and is therefore not mandated by section 1050, subdivision (a).
Under these circumstances, and considering the balancing of societal interests inherent in section 1050, subdivision (a), we conclude the trial court did not abuse its discretion by refusing to use remaining noncriminal resources for Flores’s trial.
C. The Trial Court Did Not Abuse Its Discretion by Denying the District Attorney a Continuance and by Dismissing the Matter
The District Attorney argues it was denied the opportunity to establish “good cause” for a continuance due to court mismanagement. The “mismanagement” at issue is the trial court’s allegedly improper interpretation and application of section 1050, subdivision (a), which in turn led the court to improperly place noncriminal courtrooms off-limits for Flores’s trial.
But this argument is based on the false premise that it was the actions of the trial court in this particular case which caused Flores’s trial to not go forward on the last day. The situation in the Riverside Superior Court of insufficient courtrooms and judges to try all criminal matters before the statutory deadlines is in no way novel or limited to this case—it has been the *Supp. 25 norm for some time now. (See Cole, supra, 165 Cal.App.4th at pp. Supp. 6-7, 17.) Because we have already concluded the trial court did not abuse its discretion by not utilizing available noncriminal resources to try Flores’s case, we find no court mismanagement whatsoever.
Delay caused by court congestion (and, incidentally, by poor court administration) is not a basis for continuing a criminal case absent “exceptional circumstances.” (Rhinehart v. Municipal Court (1984) 35 Cal.3d 772, 781-782 [200 Cal.Rptr. 916, 677 P.2d 1206]; see People v. Johnson (1980) 26 Cal.3d 557, 570 [162 Cal.Rptr. 431, 606 P.2d 738].)
For example, the courts have long held that when there are numerous civil departments available to try civil cases, and the court has not informed the Judicial Council that it lacks sufficient resources to try criminal matters, court congestion is not a ground for granting the prosecution a continuance beyond the limits imposed by section 1382. (Tudman v. Superior Court (1972) 29 Cal.App.3d 129, 132 [105 Cal.Rptr. 391]; Caputo v. Municipal Court (1960) 184 Cal.App.2d 412, 418 [7 Cal.Rptr. 435]; Herrick v. Municipal Court (1957) 151 Cal.App.2d 804, 807 [312 P.2d 264]; Stewart v. Superior Court (1955) 132 Cal.App.2d 536, 538-539 [282 P.2d 582]; Sigle v. Superior Court (1954) 125 Cal.App.2d 747, 748-749 [271 P.2d 526]; In re Vacca (1954) 125 Cal.App.2d 751, 752-753 [271 P.2d 162]; People v. Echols (1954) 125 Cal.App.2d 810, 814—818 [271 P.2d 595], disapproved on another ground in Wilson, supra, 60 Cal.2d at p. 152; Zamloch, supra, 106 Cal.App.2d at pp. 264—265; Dearth v. Superior Court (1940) 40 Cal.App.2d 56, 58-59 [104 P.2d 376].)
It is regrettable that in some cases, such as this, the court will be unable to find available courtrooms or judges to commence trial within the statutory time limits. And it is perhaps unavoidable that, after balancing the competing and equally important societal value placed on full access to the civil courts, a trial court will be forced to dismiss a criminal matter because good cause does not exist to continue it.
Lack of resources, not court mismanagement or congestion caused by an exceptional or emergency situation, lay behind the delay in Flores’s trial. Under this state of affairs, granting a continuance would have been an abuse of discretion. The trial court properly denied the District Attorney’s request for a continuance, and did not abuse its discretion by dismissing the action to avoid the inevitable violation of Flores’s statutory speedy trial rights.
*Supp. 26 in.
DISPOSITION
The dismissal order is affirmed.

Magers, P. J., Petersen, J., and Hernandez, J.

 Unless otherwise indicated, all further statutory references are to the Penal Code.

 To “paper” a judge is a colloquial term for filing a peremptory challenge to the judge pursuant to section 170.6 of the Code of Civil Procedure.

 P.P.C.D. stands for prepreliminary hearing conference department.

 The respondent’s brief was submitted 30 days after the District Attorney filed the appellant’s opening brief. At the time, former rule 8.706(a) of the California Rules of Court provided that a respondent’s brief was due within 20 days of the opening brief, so Flores’s *Supp. 17 brief was 10 days late. (Cf. Cal. Rules of Court, rule 8.882(a)(2), eff. Jan. 1, 2009 [respondent’s brief in limited civil and misdemeanor appeals is due 30 days after the opening brief is filed].)
The clerk of this court received Flores’s brief but did not file it. The District Attorney then submitted an appellant’s reply brief and requested that we consider it if we deemed Flores’s brief to be filed. We exercise our discretion to consider the untimely briefs, and direct the clerk to file them.

 Unlike in Cole, where the master calendar judge made an express finding that “civil matters and proceedings” were limited to “civil lawsuits” and excluded family, probate and other noncriminal matters of a civil nature (Cole, supra, 165 Cal.App.4th at pp. Supp. 14, 8), here Judge Hernandez made no such finding and did not attempt to interpret section 1050, subdivision (a).

 Our Supreme Court has noted that “there is a critical distinction between a civil action and a special proceeding of a civil nature; by definition, they are mutually exclusive.” (Yartz, supra, 37 Cal.4th at p. 536.) For instance, the bar to using a prior nonfelony conviction by plea of nolo contendere “as an admission in any civil suit” (§ 1016, subd. 3), does not apply to a sexually violent predator civil commitment proceeding (Yartz, supra, at pp. 532, 542). Nonetheless, the Legislature did not limit preference under section 1050, subdivision (a), to “civil actions” or to “civil proceedings,” but expressly included both. The difference between civil actions and special proceedings of a civil nature, while important in other contexts, is irrelevant here.

 In Cole, the court correctly pointed out that petitions for extraordinary relief arising from a criminal matter, while governed by the Code of Civil Procedure, are considered part of the criminal action. (Cole, supra, 165 Cal.App.4th at p. Supp. 13, citing Bravo v. Cabell (1974) 11 Cal.3d 834, 838-840 [114 Cal.Rptr. 618, 523 P.2d 658].) We necessarily exclude those writ proceedings from our definition of “civil matters or proceedings” under section 1050, subdivision (a).
However, we do not necessarily agree with the implication in Cole that civil contempt proceedings might be considered criminal actions just because the courts have labeled them “quasi-criminal” in nature. (Cole, supra, 165 Cal.App.4th at p. Supp. 14, italics omitted.) “Because of the potential punishment, this type of proceeding [i.e., a contempt proceeding under Code of Civil Procedure sections 1209, subdivision (a)(5), and 1218] is considered quasi-criminal, and the defendant possesses some of the rights of a criminal defendant. [Citations.]” (People v. Gonzalez (1996) 12 Cal.4th 804, 816 [50 Cal.Rptr.2d 74, 910 P.2d 1366].) We believe that whether a civil contempt proceeding falls into the category of “civil matters or proceedings” for purposes of section 1050, subdivision (a), depends more on the nature of the case in which it arises (a civil matter versus a criminal one), rather than the facts that it may result in criminal punishment and the contemner is entitled to some, but not all, of the rights afforded a criminal defendant.
Because we assume “civil matters or proceedings” is broad and encompasses almost any noncriminal matter, herein when referring specifically to civil lawsuits in the more commonplace sense (such as contract and tort actions), we will use the term “traditional civil” matters; when referring specifically to the wide range of other civil proceedings (including family, probate, juvenile and the like), we will use the term “nontraditional civil” matters.

 The District Attorney is correct “that no judge has the inherent right to try any particular case” or to avoid trying certain types of cases, but this ignores the broad discretion vested in the presiding judge to assign and apportion the court’s caseload. (Gov. Code, § 69508, subd. (a); Cal. Rules of Court, rule 10.603(b)(1)(B).)

 In its brief, the District Attorney appears to question Judge Hernandez’s factual findings that no courtrooms (other than those at Hawthorne and for family law, probate and juvenile) were available. The primary duty of the master calendar judge is to assign “a ‘ready case . . . to a ready department.’ ” (People v. Superior Court (Lavi) (1993) 4 Cal.4th 1164, 1175 [17 Cal.Rptr.2d 815, 847 P.2d 1031], quoting People v. Escobedo (1973) 35 Cal.App.3d 32, 38 [110 Cal.Rptr. 550].) By definition, the master calendar judge must stay constantly informed of the availability of trial courtrooms and judges to “ensure that the court’s policy on continuances is firm and uniformly applied, that pretrial proceedings and trial assignments are handled consistently, and that cases are tried on a date certain . . . .” (Cal. Rules of Court, rule 4.115(a).)
The record indicates that just before calling this matter, Judge Hernandez was on the telephone and was unable to find any available courtrooms. The District Attorney does not seriously contest Judge Hernandez’s factual findings, and we conclude they are adequately supported on this record.

 We also agree with the trial court’s stated findings, which the District Attorney does not dispute, that the work of family, probate and juvenile judges is very important and that those judges are burdened with heavy caseloads. (See Cole, supra, 165 Cal.App.4th at p. Supp. 16.)