[No. H024372. Sixth Dist. Apr. 15, 2003.]

ALEXANDER E. RAWLS, Plaintiff and Appellant, v.
EVONNE ZAMORA, as Registrar of Voters, etc., Defendant and
Respondent.

**COUNSEL**

Alexander E. Rawls, in pro. per., for Plaintiff and Appellant.

Ann Miller Ravel, County Counsel, and Kathryn A. Berry, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**PREMO, J.**—Plaintiff Alexander E. Rawls was a would-be write-in candidate for Santa Clara County Sheriff at the March 5, 2002 Primary Election. He sued defendant Evonne Zamora, Santa Clara County Registrar of Voters, seeking declaratory relief and a writ of mandate after defendant informed him that write-in votes for him would not be counted because his nomination papers showed that he did not meet the qualifications for office specified by Government Code section 24004.3 (requiring experience in law enforcement).[1] The trial court rendered judgment for defendant, and plaintiff appeals. ■ Given that the primary election has passed, the mandate aspect of plaintiff's action, which sought a judgment compelling defendant to count votes for plaintiff, is moot. Plaintiff concedes as much. But he urges that the declaratory relief aspect of the action is not moot because he (1) seeks a judgment declaring that section 24004.3 is unconstitutional, and (2) intends to run for sheriff in the future. "If a matter is of general public interest and is likely to recur in the future, a resolution of the issue is appropriate." (*Green v. Layton* (1975) 14 Cal.3d 922, 925 [123 Cal.Rptr. 97, 538 P.2d 225].) Given that there is an obvious public interest in the constitutionality of section 24004.3 and plaintiff or others may later face the issue, we agree to address the question. As to the merits, we disagree with plaintiff. We therefore affirm the judgment.

### SECTION 24004.3

The pertinent part of the statute in question is subdivision (a). It states: "No person is eligible to become a candidate for the office of sheriff in any county unless, at the time of the final filing date for election, he or she meets one of the following criteria: [¶] (1) An active or inactive advanced certificate issued by the Commission on Peace Officer Standards and Training. [¶] (2) One year of full-time, salaried law enforcement experience within the provisions of Section 830.1 or 830.2 of the Penal Code at least a portion of which shall have been accomplished within five years prior to the date of filing, and possesses a master's degree from an accredited college or university. [¶] (3) Two years of full-time, salaried law enforcement experience within the provisions of Section 830.1 or 830.2 of the Penal Code at least a portion of which shall have been accomplished within five years prior to the date of filing, and possesses a bachelor's degree from an accredited college or university. [¶] (4) Three years of full-time, salaried law enforcement experience within the provisions of Section 830.1 or 830.2 of the Penal Code at least a portion of which shall have been accomplished within five years prior to the date of filing, and possesses an associate in arts or associate in

---

[1] Further unspecified statutory references are to the Government Code.

science degree, or the equivalent, from an accredited college. [¶] (5) Four years of full-time, salaried law enforcement experience within the provisions of Section 830.1 or 830.2 of the Penal Code at least a portion of which shall have been accomplished within five years prior to the date of filing, and possesses a high school diploma or the equivalent."

## BACKGROUND

Plaintiff is an advocate of the right to bear arms that stems from the Second Amendment to the United States Constitution. He favors "shall issue" laws, which generally bar law enforcement authorities from denying applications for concealed weapon permits. According to plaintiff, civilians generally favor such laws while law enforcement authorities generally oppose them. By way of example, plaintiff claims that the current sheriff has earned a reputation for denying virtually all such permits. He concludes that there is a division of opinion over this aspect of law enforcement policy.

Plaintiff admittedly lacks the law enforcement qualifications specified by section 24004.3. He seeks election as sheriff on a civilian platform that promises to limit denials of concealed weapon permits.

## PLAINTIFF'S CONTENTION

Plaintiff specifically contends that section 24004.3 transgresses the First Amendment right to free speech and the Fourteenth Amendment right to equal protection of the laws.[2] He generally urges that, by restricting the pool of sheriff candidates to law enforcement personnel, section 24004.3 effectively excludes the civilian viewpoint from being heard. He cites authority to the effect that ballot restrictions place burdens on two different, although overlapping kinds of rights, which rank among our most precious freedoms: the right of individuals to associate for the advancement of political beliefs; and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. (See Williams v. Rhodes (1968) 393 U.S. 23, 30 [89 S.Ct. 5, 10, 21 L.Ed.2d 24] [state law making it virtually impossible for large new political party or small old political party to place

---

[2]Plaintiff notes that these rights are also protected by the California Constitution in article I, sections 2, 3, and 7. He states in his brief: "Since the Federal Constitution fully applies, and takes priority, this brief will limit itself to federal constitutional argument, with the state arguments implicit."

presidential electors on ballot].) ■ The parties agree that the constitutionality of election laws[3] can only be determined by a complete weighing of interests given the high stakes goal that elections be fair and honest. (See *Burdick v. Takushi* (1992) 504 U.S. 428 [112 S.Ct. 2059, 119 L.Ed.2d 245] (*Burdick*) [ban on write-in voting held valid]; *Anderson v. Celebrezze* (1983) 460 U.S. 780, 789 [103 S.Ct. 1564, 1570, 75 L.Ed.2d 547] (*Anderson*) [state law requiring only independent presidential candidates to meet early deadline for inclusion on ballot held invalid].)

## DISCUSSION

■ In *Burdick*, which, in turn, relies on *Anderson*, the Supreme Court developed a balancing test to resolve the tension between a candidate's speech rights and the state's interest in preserving the fairness and integrity of the voting process. It explained the test as follows.

■ "It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.' [Citation.] It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute. [Citation.] The Constitution provides that States may prescribe '[t]he Times, Places and Manner of holding Elections for Senators and Representatives,' [citation], and the Court therefore has recognized that States retain the power to regulate their own elections. [Citations.] Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.' [Citation.] [¶] Election laws will invariably impose some burden upon individual voters. Each provision of a code, 'whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends.' [Citation.] Consequently, to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest, as petitioner suggests, would tie the hands of States seeking to

---

[3]Strictly speaking, we view this case as a qualification case in the sense that the law at issue relates to eligibility to be elected rather than electoral procedure. (See *United States Term Limits, Inc. v. Thornton* (1995) 514 U.S. 779 [115 S.Ct. 1842, 131 L.Ed.2d 881].) In any event, laws that affect candidates necessarily have an impact on the rights to advance political beliefs and cast effective votes. (*McLaughlin v. North Carolina Bd. of Elections* (M.D.N.C. 1994) 850 F.Supp. 373, 382.) And "the rights of voters and the rights of candidates do not lend themselves to neat separation." (*Bullock v. Carter* (1972) 405 U.S. 134, 143 [92 S.Ct. 849, 856, 31 L.Ed.2d 92].)

assure that elections are operated equitably and efficiently. . . . Accordingly, the mere fact that a State's system 'creates barriers . . . tending to limit the field of candidates from which voters might choose . . . does not of itself compel close scrutiny.' [Citations.] [¶] Instead, as the full Court agreed in [*Anderson*], a more flexible standard applies. A court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.' [Citations.] [¶] Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to 'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.' [Citation.] But when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." (*Burdick, supra*, 504 U.S. at pp. 433-434 [112 S.Ct. at p. 2063].)

■ We emphasize that it is only when the restrictions are real and substantial, that the court must review them under a heightened standard. ■ "[T]he function of the election process is 'to winnow out and finally reject all but the chosen candidates,' [citation] not to provide a means of giving vent to 'short-range political goals, pique, or personal quarrel[s].' [Citation.] Attributing to elections a more generalized expressive function would undermine the ability of States to operate elections fairly and efficiently." (*Burdick, supra*, 504 U.S. at p. 438 [112 S.Ct. at p. 2066].)

"Courts will uphold as 'not severe' restrictions that are generally applicable, even-handed, politically neutral, and which protect the reliability and integrity of the election process. [Citation.] This is true even when the regulations 'have the effect of channeling expressive activities at the polls.' [Citations.]" (*Rubin v. City of Santa Monica* (9th Cir. 2002) 308 F.3d 1008, 1014.) "Courts will strike down state election laws as severe speech restrictions only when they significantly impair access to the ballot, stifle core political speech, or dictate electoral outcomes." (*Id.* at p. 1015.)

■ Here, section 24004.3 is evenhanded—it is applicable to all candidates. It is politically neutral—it simply requires candidates to have law

enforcement experience. It does not significantly impair access to the ballot—there are five broad qualifications, which embrace people of varying experience. The section does not stifle speech or dictate electoral outcome in any sense.

Plaintiff's argument that section 24004.3 fosters the "law enforcement" view of the right to bear arms at the expense of the "civilian" view is amorphous political rhetoric. Even plaintiff concedes that the dueling viewpoints arise from a "tendency" rather than defined political groups. And he further admits: "it is possible for members of law enforcement to share the civilian tendency to be in favor of gun rights." Thus, section 24004.3 does not shut out plaintiff's voice. Plaintiff's voice can be heard simply by supporting qualified candidates for sheriff that advance the "civilian" viewpoint.

Accordingly, we hold that the burden imposed by section 24004.3 on plaintiff's free speech is not "severe." We therefore apply a "less exacting" standard of review to the section and examine whether the state's important regulatory interests are sufficient to justify the burden.

There can be no doubt that the state has a strong interest in assuring that a person with aspirations to hold office is qualified to administer the complexities of that office. (*Johnson v. Admin. Office of the Courts, Kentucky* (E.D.Ky. 2001) 133 F.Supp.2d 536, 540.) And the authority of the state to determine the qualifications of their most important governmental officials is an authority that lies at the heart of representative government. (*Gregory v. Ashcroft* (1991) 501 U.S. 452, 463 [111 S.Ct. 2395, 2402, 115 L.Ed.2d 410].)

Plaintiff concedes as much. He states: "There is indeed a compelling state interest in having the county sheriff have a law enforcement background." Plaintiff's point is that the state has an equal interest in allowing "civilian" candidates for sheriff. But, if that is true, the point implicates the political process, not the constitutionality of the existing candidate qualification statute. Plaintiff's remedy is to petition the Legislature for a change in the law.

In short, California's important regulatory interest in the qualifications of its sheriffs justifies the less-than-severe restrictions on First and Fourteenth Amendment freedoms imposed by section 24004.3.

## DISPOSITION

The judgment is affirmed.

Rushing, P. J., and Wunderlich, J., concurred.

A petition for a rehearing was denied May 9, 2003, and appellant's petition for review by the Supreme Court was denied June 25, 2003. George, C. J., did not participate therein.