175 Cal.App.4th 1377 (2009)
THE PEOPLE, Plaintiff and Appellant,
v.
TONY ROBIN WAGNER, Defendant and Respondent.
No. E047167.
Court of Appeals of California, Fourth District, Division Two.
July 21, 2009.
*1379 Rod Pacheco, District Attorney, and Alan D. Tate, Deputy District Attorney, for Plaintiff and Appellant.
Stephen S. Buckley, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION
RICHLI, Acting P.J.
This is an appeal by the People from the dismissal of the case against defendant Tony Robin Wagner pursuant to Penal Code section 1382[1] because the trial court found there were no courtrooms available to hear the last-day case in a timely manner, and there was not good cause to continue the case.
The People contend on appeal that the trial court, pursuant to section 1050, subdivision (a), should have given precedence to the instant case over civil cases, including family, probate, and general civil cases being heard in Riverside County, and the trial court abused its discretion by refusing to continue the case beyond the time limit set forth in section 1382.
*1380 (1) We will conclude the trial court did not abuse its discretion in denying the requested continuance after finding no courtroom available in which to try the matter and that dismissal of the matter was not error.

I

PROCEDURAL BACKGROUND
On March 23, 2006, the People filed a felony complaint against defendant charging him with one count of assault with a semiautomatic firearm (§ 245, subd. (b)). Defendant was also charged with allegations that he personally used a firearm (§ 12022.5, subd. (a)) and inflicted great bodily injury (§ 12022.7, subd. (a)).[2] A preliminary hearing was conducted on December 20, 2006, and defendant was held to answer. An information was filed with the same charges as the complaint on December 29, 2006.
On January 3, 2007, defendant was arraigned on the information. The case was continued many times between February 28, 2007, and September 22, 2008, by request of both parties; it was then finally set for trial. On the last day for trial, the trial court, specifically the calendar judge, concluded there were no available courtrooms, and the case was set for a motion to dismiss under section 1382 on the following day. That motion was granted.

II

FACTUAL BACKGROUND
On March 7, 2006, defendant and his friend, Scott Lamb, went to a residence occupied by Jerry Jackson located on Stetson Avenue in Hemet.[3] They were accompanied by Jackson's ex-girlfriend, Celeste Trzepacz, who wanted to get her dog back from Jackson. After an exchange of words, Lamb and Jackson got into a fistfight. According to Trzepacz, prior to the fight, Lamb removed a handgun from his waistband and handed it to defendant. Trzepacz went inside Jackson's residence, and while inside, she heard three gunshots. When she emerged from the house, she saw that Jackson had been shot and was on the ground. He had gunshot wounds on both knees. Trzepacz believed that defendant was still holding the handgun. Defendant was interviewed by the police after the incident. He began the interview denying being *1381 present. He eventually told police, "I shot him" but claimed Jackson was coming toward him. Defendant described the gun to police as a semiautomatic handgun.

III

ANALYSIS
The People contend that the trial court erred by dismissing the case pursuant to section 1382 because it failed to properly consider and give precedence to this case over civil cases in its effort to find an available courtroom. Further, the trial court erred by failing to conclude that court congestion and mismanagement constituted good cause to continue the case.

A. Additional Factual Background

On September 22, 2008, several cases (including the instant case, two other felony cases, and one misdemeanor case) were called on their last day.[4] The trial court informed counsel for all defendants that it had checked around the county in both the civil and criminal courts, and there were no courtrooms available until the following day. The trial court found that most of the family law courts did not have jury boxes, and the cases heard in those courts were important in order to protect children. It stated, "Taking away the judge that protects the children would be very unfortunate for the children and for society." The trial court also stated that most of the juvenile courts also did not have jury boxes and had "huge" calendars. The time deadlines for prosecuting juveniles were very strict. Further, they were responsible for helping children get out of abusive or neglectful homes.
As for civil courts, the trial court refused to interrupt an ongoing civil jury trial. The trial court also rejected that the trial judge who handled guardianship and the probate judge could be diverted to do criminal trials. It then stated, "The three civil judges assigned to the converted Hawthorne Elementary School are not going to get a criminal trial. Hawthorne is a temporary use facility. There is insufficient security at Hawthorne. It would be unsafe for jurors, for the DA, defense counsel and for the witnesses if criminals and criminal trials were assigned to Hawthorne. Also, the administrative office of the courts has assigned various visiting judges to Hawthorne for the specific *1382 purpose of doing civil trials. I will not change the assignment unless the Court of Appeal[] or administrative office of the court orders us to do so."[5]
Further, the trial court refused to divert himself, the calendar judge, to conduct a criminal trial, as there would then be no one to conduct calendar. The trial court noted that it had informed the chair of the Judicial Council, the Administrative Office of the Courts (AOC), pursuant to section 1050 that the court was in danger of dismissing cases. The trial court ruled, "Therefore, we have done everything possible to find a place for the last remaining cases. No courtroom is available. The defense Motion to Dismiss will be heard tomorrow . . . ."
The district attorney inquired regarding the efforts made by the trial court to find a courtroom. The trial court noted that there were no trailing cases sent out already; all were last day. It noted that every civil courtroom in the county was conducting a criminal trial, so even if it wanted to interrupt a civil trial, it could not. It refused to take the calendar judge out to try a short misdemeanor case.
The trial court also found that no judge could come back from vacation, all of the pro tempore judges were being used, and the presiding judge was involved in meetings with the AOC.
The district attorney asked that the judges conducting exclusively civil cases at Hawthorne Elementary School be brought to the courthouse to try criminal cases because criminal trials take precedence over civil trials. The district attorney stated, "Is there something I'm missing that says the administrative office of the court takes precedence over the law?" The trial court refused to have the civil judges try criminal cases unless told to do so by the AOC or the Court of Appeal.
The district attorney argued that there was good cause to continue the cases because of the court congestion and objected to a motion to dismiss. The trial court found that court congestion was not an emergency situation that warranted a continuance, as it was a routine circumstance in Riverside County. Defendant's counsel objected to any further delay. At no time did the district attorney advise the trial court as to the facts or severity of the instant crime.
The following day, September 23, 2008, defendant's case was heard on a motion to dismiss under section 1382. The district attorney informed the trial *1383 court that he felt courtrooms were available. The trial court dismissed the case. The People chose at the time not to refile the case.

B. Mootness

Initially, defendant contends that this appeal is moot because this court either cannot provide effectual relief or such relief would not have a practical impact. Defendant relies upon the fact that, since the relief requested by the People in this case is reinstatement of the charges against defendant and the district attorney can currently refile this case,[6] any decision by this court would provide no effectual relief and have no practical impact.
(2) "A case becomes moot when a court ruling can have no practical impact or cannot provide the parties with effective relief." (Simi Corp. v. Garamendi (2003) 109 Cal.App.4th 1496, 1503 [1 Cal.Rptr.3d 207]; see also In re Antoine D. (2006) 137 Cal.App.4th 1314, 1324 [40 Cal.Rptr.3d 885].) Nonetheless, "`[i]f a matter is of general public interest and is likely to recur in the future,'" a resolution of the issue by the court is appropriate. (Rawls v. Zamora (2003) 107 Cal.App.4th 1110, 1113 [132 Cal.Rptr.2d 675].) In addition, cases are not moot when they present questions that are capable of repetition, yet evade review. (Hammond v. Agran (1999) 76 Cal.App.4th 1181, 1186 [90 Cal.Rptr.2d 876].)
(3) This court could provide effectual relief if we were to find the People successful on appeal. Felony prosecutions are generally "subject to a two-dismissal rule; two previous dismissals of charges for the same offense will bar a new felony charge." (Burris v. Superior Court (2005) 34 Cal.4th 1012, 1019 [22 Cal.Rptr.3d 876, 103 P.3d 276].) If we were to dismiss the instant appeal as moot, the first dismissal of this case would stand. As such, if the case were to be dismissed a second time, and the People could not obtain relief on that case, then they would be unable to refile the case. (See also § 1387.1 [providing for a third filing under certain conditions when a violent felony is charged as defined in § 667.5].) If the People were to be successful here, they would be entitled to reinstatement of the charges and would still retain the right to refile at least two more times if the case were subsequently dismissed.
Additionally, the resolution in this case has a practical impact and provides effectual relief to defendant. In choosing to appeal this case under section 1238, subdivision (a)(8), as we will discuss in more detail, post, the People are foreclosed from refiling the charges in this case. By resolving the instant *1384 case in defendant's favor, he has obtained effective relief by not being subject to further prosecution. We have found no legal authority that precludes us from finding this case is not moot because it grants relief to the defending party. Based on the unique facts present in this case, we conclude the appeal is not moot.

C. Standard of Review

(4) "The right to a speedy trial is a fundamental right. [Citation.] It is guaranteed by the state and federal Constitutions. [Citations.] The Legislature has also provided for `"a speedy and public" trial as one of the fundamental rights preserved to a defendant in a criminal action. [Citation.]' [Citation.] To implement an accused's constitutional right to a speedy trial, the Legislature enacted section 1382. [Citation.]" (Rhinehart v. Municipal Court (1984) 35 Cal.3d 772, 776 [200 Cal.Rptr. 916, 677 P.2d 1206].)
Here, the trial court dismissed the case under section 1382 because the People failed to bring the case to trial within 60 days after defendant was arraigned on the information. (See § 1382, subd. (a)(2).) However, the reason the case could not be brought to trial was that there were no available courtrooms, and the trial court denied the People's request for a continuance pursuant to section 1050, subdivision (a). Hence, the issues to be decided on appeal are whether the trial court erred by finding there were no available courtrooms and whether it should have granted a continuance.
(5) Section 1050, subdivision (a) provides that criminal cases shall take precedence over civil cases as long as such precedence is consistent with the stated policy that hearing a criminal case before a civil case furthers the "ends of justice." In People v. Osslo (1958) 50 Cal.2d 75, 106 [323 P.2d 397] (Osslo), the Supreme Court concluded that the decision of whether a criminal case takes precedence over a civil case must not be arbitrary. The language of section 1050 vests discretion in the trial court to make these decisions, which evokes the abuse-of-discretion standard on appeal. Accordingly, we uphold the trial court's decision "except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (People v. Jordan (1986) 42 Cal.3d 308, 316 [228 Cal.Rptr. 197, 721 P.2d 79], italics omitted.)
The People contend that the trial court committed errors of law, and as such de novo review is proper here. They rely on the recent case of People v. Hajjaj (2009) 175 Cal.App.4th 415. In that case, the appellate court recognized that a trial court's denial of a continuance is generally reviewed under the abuse of discretion standard but also noted that "a reviewing court applies the independent or de novo standard of review, which is nondeferential, to a *1385 trial court's resolution of a pure question of law or a mixed question of law and fact that is predominantly legal. [Citation.]" (Id. at p. 423.) In Hajjaj, the appellate court determined that the trial court committed an error of law by denying the People's request for a continuance when an outlying courtroom was available on the last day, but the parties could not reach the court by the end of the day. (Id. at p. 429.)
We do not find the trial court committed an error of law in this case. It properly exercised its discretion in finding no available courtrooms (as we will discuss in more detail, post) and in denying the People's request for a continuance due to court congestion.

D. Section 1050, subdivision (a)

Section 1050, subdivision (a) provides in pertinent part, "The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time. To this end, the Legislature finds that the criminal courts are becoming increasingly congested with resulting adverse consequences to the welfare of the people and the defendant. . . . It is therefore recognized that the people, the defendant, and the victims and other witnesses have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial officers and of all counsel, both for the prosecution and the defense, to expedite these proceedings to the greatest degree that is consistent with the ends of justice. In accordance with this policy, criminal cases shall be given precedence over, and set for trial and heard without regard to the pendency of, any civil matters or proceedings."
In Osslo, supra, 50 Cal.2d 75, which still remains good law, the defendant claimed that his case was erroneously continued after the date set for trial because civil cases were being given precedence over his criminal case under former section 681a. (Osslo, at p. 106.) The trial court indicated that there were several judges out on assignment, the juvenile courts were congested, and another department was handling the case of a person who was confined as mentally ill. (Id. at pp. 105-106.) It also rejected the defendant's objection to the continuance on the ground that there were civil trials occurring in other departments over which his criminal trial took precedence. (Id. at p. 104.)
At the time of Osslo, former section 681a provided, "`The welfare of the people of the state of California requires that all proceedings in criminal cases shall be heard and determined at the earliest possible time. It shall be the duty of all courts and judicial officers and of all district attorneys to expedite the hearing and determination of all such cases and proceedings to the greatest degree that is consistent with the ends of justice.'" (Osslo, supra, *1386 50 Cal.2d at p. 106.) The Supreme Court also cited to the then section 1050, which provided, "`Criminal cases shall be given precedence over all civil matters and proceedings.'" (50 Cal.2d at p. 106.)[7]
(6) Without defining "civil matters and proceedings" the Supreme Court held, "It does not appear that the policy of sections 681a and 1050 was disregarded. [The trial court]'s explanation of the condition of the calendar shows that defendants were not being deprived of precedence over civil cases for any arbitrary reason . . . . Rather, it appears that the orderly administration of a crowded calendar required the continuances to enable trial of the case in a proper department. The precedence to which criminal cases are entitled is not of such an absolute and overriding character that the system of having separate departments for civil and criminal matters must be abandoned." (Osslo, supra, 50 Cal.2d at p. 106, italics added.)
(7) Osslo clearly provides that the provisions of section 1050 are not absolute and that a trial court is afforded the discretion to determine if a particular criminal case should be heard before a civil case.[8] Further, it approves of the practice of providing separate departments for civil and criminal trials. Finally, at no time did the Osslo court state that the trial court was to consider the particular cases that were being heard in the various departments, including traditional civil courtrooms or juvenile courts.
Other courts (referring to Osslo) have found that section 1050, subdivision (a) merely establishes a policy, is not absolute, and does not require that criminal proceedings be given precedence over civil proceedings regardless of the circumstances and without consideration of the ends of justice. (E.g., People v. McFarland (1962) 209 Cal.App.2d 772, 777 [26 Cal.Rptr. 596].)
Based solely on the findings in Osslo (which we are bound to follow (see Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455-456 [20 Cal.Rptr. 321, 369 P.2d 937])), where the Supreme Court authorized that separate departments for civil and criminal cases are permissible and the fact that the decision to hear a criminal case over a civil case must not be arbitrary, we conclude the trial court did not abuse its discretion in this case *1387 by finding that there were no available courtrooms. Under Osslo, the presiding judge and court administrators can designate separate civil departments that need not be considered to try criminal matters. As such, the trial court exercises its discretion by prioritizing cases in the available courtrooms. Section 1050 and Osslo require nothing more.[9] The trial court clearly set forth its reasons for not disturbing family, probate, and other special-proceeding courts that were engaged in important cases. It also concluded that the facilities at Hawthorne Elementary School were not acceptable for trying criminal cases based on lack of security. We have to assume that such determination was proper, as the People have provided no evidence to the contrary. Although the People suggest that security could be provided, we cannot conclude that such security would be adequate based on the bare record in this case. Finally, although the People suggested below, and suggest here, that those judges could be transferred to the Riverside Hall of Justice courthouse, there is no evidence that a courtroom was available.
Finally, it appears from the finding in Osslo that there is nothing inherently unfair in classifying a separate department for civil cases as long as it is not an arbitrary decision. As stated in People v. Flores (2009) 173 Cal.App.4th Supp. 9 [92 Cal.Rptr.3d 582] (Flores), which we will discuss in more detail, post, up until the time that the Hawthorne judges were appointed, very few civil cases were being heard in Riverside County. (Id. at p. Supp. 22.) We cannot find that the special appointment of three judges to hear civil cases and the trial court's refusal to divert those judges to criminal cases was an arbitrary decision. As noted by the trial court, all other general civil courtrooms at the courthouse were hearing criminal matters.[10] Since section 1050 is clearly not absolute, and the record supports that the trial court considered all of the various options to hear the instant matter, we cannot say that the determination that no courtrooms were available was arbitrary.
(8) The People contend that this court should direct the trial court to make a case-by-case analysis of each case pending in the various courts to determine whether a criminal case should take precedence over less critical civil matters. They argue we must define "civil matters or proceedings" in order to give the trial court guidance as to which cases should be heard first. They have provided no authority, however, for their proposition that such a *1388 review is required by section 1050. Further, based on Osslo, the Supreme Court does not require such a determination. We believe that the trial court clearly can exercise its discretion in implementing section 1050 by considering the various departments and the types of cases heard in those departments. Asking the calendar judge to review each case in every department would be an insurmountable task and is not mandated by either section 1050 or the Supreme Court. Section 1050 only requires that the trial court's decision regarding the precedence of a criminal matter over any type of civil case is not arbitrary.
Moreover, although other cases cited by the People have held that hearing civil matters before criminal cases was improper, none of those cases discussed Osslo; further, although stating that section 1050 was a legislative "policy," they did not consider whether such determination was consistent with the ends of justice. (Perez v. Superior Court (1980) 111 Cal.App.3d 994, 1000 [169 Cal.Rptr. 45]; Tudman v. Superior Court (1972) 29 Cal.App.3d 129, 132 [105 Cal.Rptr. 391]; Herrick v. Municipal Court (1957) 151 Cal.App.2d 804, 810 [312 P.2d 264].) Moreover, in those cases, traditional civil courtrooms were not already being used to hear criminal matters. (Tudman, at p. 132; Perez, at p. 1000; Herrick, at pp. 809-810.) Here the trial court stated that all the traditional civil courtrooms were being used for criminal trials, and no evidence has been presented to suggest otherwise. Additionally, the Hawthorne Elementary School facility could not handle criminal trials without adequate security, and there was no evidence that other secure courtrooms were available. Therefore, we cannot conclude that the trial court made an arbitrary decision to refuse to use the Hawthorne judges to conduct this trial or transfer those judges to other courtrooms.
Furthermore, while the charges were before the calendar judge, the facts of the case were never related to the court to help it assess the seriousness of the matter. The trial court had no means of determining if this criminal case should be prioritized over the other criminal cases that were also being called on the last day. Although this may have made no practical difference in finding an available courtroom, the People at the very least should provide the trial court with a full picture of the cases that it is charged with assigning. As stated in People v. Cole (2008) 165 Cal.App.4th Supp. 1, 16 [82 Cal.Rptr.3d 699] (Cole) (which we will discuss in more detail, post), "[b]ecause the policy of criminal case precedence expressed in section 1050, subdivision (a), is based on the welfare of the citizens of the State of California," there could be a case before the trial court of such significant severity that it would determine it must find an available courtroom no matter what the circumstances.
Court congestion and reluctance to open up the Hawthorne Elementary School venue to the trial of criminal matters were not the sole factors leading *1389 to this dismissal. Defendant was arraigned on the information on January 3, 2007. The defense was granted six continuances, several of which were unopposed. The parties stipulated to 12 continuances, which the trial court approved. On September 12, 2008, defendant announced ready, but the People were not ready for trial. On September 22, 2008, the matter was announced ready for trial by both sides, almost 18 months after defendant's arraignment on the information. On this record, the plethora of continuances accepted by the parties and allowed by the court over the 18-month pendency of this case foretold the certainty of what did occur.
Further support for the conclusion that the court did not abuse its discretion in dismissing the instance case is found in the published superior appellate court cases of Cole, supra, 165 Cal.App.4th Supp. 1 and Flores, supra, 173 Cal.App.4th Supp. 9, which, although not binding on us, are nevertheless persuasive in their reasoning.
In Cole, the trial court found that there were no available courtrooms to try two misdemeanor cases. It noted that this type of situation was not an emergency but a "continuing problem of constantly rising caseloads." (Cole, supra, 165 Cal.App.4th at p. Supp. 6, fn. omitted.) All of the civil courtrooms were hearing criminal trials.[11] The trial court interpreted section 1050, subdivision (a) to exclude family law, probate, juvenile, traffic or small claims matters, and in any event, the important work done by these departments "would be completely eliminated" if criminal trials took precedence over those matters. Such elimination would be "detrimental to the citizens of the community." (Cole, at p. Supp. 8.) The case was dismissed pursuant to section 1382 because there were no available courtrooms. (Cole, at p. Supp. 9.)
The Cole court concluded a precise definition of "civil matters or proceedings," as used in section 1050, subdivision (a), was "unnecessary based on the discretionary nature of section 1050, subdivision (a), which gives the trial court discretion to allocate its resources in a manner consistent with the ends of justice." (Cole, supra, 165 Cal.App.4th at p. Supp. 14.) Thus, the court found that "civil matters or proceedings" had not been defined in section 1050 and did not believe such definition was necessary. (Cole, at pp. Supp. 13-14.) It then held that section 1050 was merely directory and not mandatory. (Cole, at p. Supp. 14.) It concluded that "whether a particular criminal case takes precedence over civil matters is within the court's discretion." (Id. at p. Supp. 15.)
The Cole court found that the trial court had not abused its discretion in dismissing the cases: "We conclude that the trial court was entitled to *1390 exercise, and did exercise, its discretion in a manner consistent with the policy and objectives of section 1050, subdivision (a). It considered all relevant circumstances, including the welfare of the citizens of the State of California. It indicated that separate from its legal interpretation of the term `civil,' its decision was based on its finding that traditional civil courtrooms were already exclusively devoted to criminal trials, that the work done by the family, probate, traffic, small claims and juvenile courts was of great importance to the community, and that depriving the community of these remaining judicial services would be highly detrimental to its citizens. Because the policy of criminal case precedence expressed in section 1050, subdivision (a), is based on the welfare of the citizens of the State of California, this is a valid and relevant consideration in determining whether a particular criminal case should receive precedence." (Cole, supra, 165 Cal.App.4th at p. Supp. 16.)[12]
After the decision in Cole, in Flores, the same trial judge who was in charge of the master calendar in this case, called Flores's case. The trial court stated that all courtrooms in the entire county were unavailable and that most of the civil courtrooms were engaged in criminal trials. (Flores, supra, 173 Cal.App.4th at p. Supp. 13.) The court then noted that there were three civil judges doing civil trials at the Hawthorne Elementary School. It noted that the judges had been appointed by the AOC to conduct civil cases only. It also stated that the security was inadequate at the facility to ensure the safety of the jurors and court staff. (Ibid.) It refused to transfer the judges to a secure courtroom because it would be interrupting civil trials. (Id. at p. Supp. 16.) It also rejected that it would assign any cases to family law or juvenile courts as they had huge caseloads and were protecting children and spouses. (Id. at pp. Supp. 13-14.) The Judicial Council had been notified to request a visiting judge, but apparently none was available. (Id. at p. Supp. 15.) The case was dismissed. (Id. at p. Supp. 16.)
On appeal to the appellate department of the superior court, the court first expanded on Cole and concluded that "`civil matters or proceedings' in section 1050, subdivision (a), is broad indeed, and means any civil action or special proceeding of a civil nature which is not clearly a criminal action," but that a "`precise definition'" is not necessary. (Flores, supra, 173 Cal.App.4th at p. Supp. 20, fn. omitted.) The Flores court then reiterated that section 1050, subdivision (a) was not absolute and only requires granting precedence in a criminal case if to do so is just. (Flores, at p. Supp. 22.) It agreed with Cole that family, probate, and juvenile departments should not make way for criminal matters. (Flores, at p. Supp. 22.)
*1391 The Flores court then recognized that after Cole the Hawthorne Elementary School judges were hearing civil cases and that the district attorney was arguing those courtrooms should be used to conduct criminal trials. It concluded that the denial of access to courts implicates due process and that civil litigants are entitled to meaningful access to the court system. (Flores, supra, 173 Cal.App.4th at pp. Supp. 23-24.) The court recognized that all traditional civil courtrooms in Riverside County were already being used for criminal trials. It then held, "We therefore disagree with the District Attorney's position that even further precedence must be granted to criminal matters. Conducting criminal trials at Hawthorne, temporarily assigning the judges currently assigned to Hawthorne to secure courtrooms at other facilities, or forcing family and probate departments to conduct criminal trials, would simply not be `consistent with the ends of justice,' and is therefore not mandated by section 1050, subdivision (a)." (Id. at p. Supp. 24, fn. omitted.)[13]
The reasoning in Flores and Cole is sound. The People in the instant appeal have provided nothing new to this court that would change such reasoning. The findings are supported by Osslo and the plain language of section 1050. The policy to expedite criminal cases in conformance with the ends of justice makes it a reasonable determination on the part of the trial court to refuse to disturb those courts to hear a criminal case. Making an absolute rule that criminal cases should take precedence over these types of cases would not serve the "ends of justice."
People v. Swain (1995) 33 Cal.App.4th 499 [39 Cal.Rptr.2d 422] provides a useful summation of the reality of the current situation in most courts. Although the issue in that case was whether an assignment of temporary municipal court judges to sit as superior court judges for three years was a violation of article VI, section 4 of the California Constitution, this court noted that "[t]oday's superior courts are faced with heavy case loads and the judges are chronically overburdened. Thus, litigants, defendants, and the public are prejudiced by delays in bringing criminal cases to trial. For example, delays causing a defendant to remain in custody affect his liberty interests, while the public unnecessarily may have to pay the added cost of incarceration. As time goes by, memories of witnesses fade. Therefore, Penal Code section 1050, subdivision (a) provides that `criminal cases shall be given precedence over, and set for trial and heard without regard to the pendency of, any civil matters or proceedings.' This leads to a frustration of *1392 the expeditious handling of civil cases. Accordingly, there is great need for flexibility in administration of the court system on a day-to-day basis." (Swain, at pp. 503-504; see also People v. Kwolek (1995) 40 Cal.App.4th 1521, 1529-1530 [48 Cal.Rptr.2d 325].)
The trial courts in Riverside County need flexibility in their administration. Section 1050 provides that, to the extent that it meets the ends of justice, criminal cases should be given precedence over civil cases. However, the reality of the situation in the trial courts in this county is that no other cases would be heard if all criminal cases were given priority over all civil matters. Such a result clearly does not meet the ends of justice. Trial courts, especially master calendar judges, are in the best position to determine on a "day-to-day basis" what cases should be heard as long as the decision on whether a criminal case takes precedence over a civil case is not arbitrary. (People v. Swain, supra, 33 Cal.App.4th at p. 504.) This does not require a case-by-case analysis in each department as argued by the People, an unworkable solution that has no legal support. Further, excluding departments as a whole, i.e. family, probate, and guardianship, after the trial court has determined they have huge caseloads and are involved in protecting children and others, is not, as argued by the People, an "ongoing fallacy" that the trial court is exercising its discretion. The master calendar judge is well aware of the types of cases heard in those departments on a daily basis. Further, the trial courts are clearly placing criminal trials ahead of civil trials in Riverside County when such preference is just.
We conclude that the trial court did not err or abuse its discretion by finding that there were no available courtrooms to try this last-day case.

E. Refusal to Grant Continuance due to Court Congestion and Mismanagement

As the People argued in Flores and Cole, they claim here that additional error was committed by the trial court based on the ground that it should have granted their request for a continuance beyond the section 1382 time limit due to court mismanagement and congestion.
In Cole, the appellate court rejected the People's argument that the trial court abused its discretion by refusing to continue the trial beyond the statutory limit of section 1382. In Cole, the court found "chronic court congestion and overcrowding do not constitute good cause for a continuance *1393 under section 1382." (Cole, supra, 165 Cal.App.4th at p. Supp. 17; see also Rhinehart v. Municipal Court, supra, 35 Cal.3d at p. 782 ["absent exceptional circumstances, a trial court's congested calendar does not constitute good cause to avoid a dismissal under section 1382"].) The Cole court also found, "Because the state has the obligation to provide sufficient resources to dispose of the usual court business promptly, court congestion will not constitute good cause unless the circumstances are exceptional. [Citation.] Exceptional circumstances are defined as unique, nonrecurring events which have produced an inordinate number of cases for court disposition. [Citation.]" (Cole, at p. Supp. 17.) The court concluded, "The record shows that the lack of available courtrooms was the result of chronic court congestion, a fact undisputed by the People. Nothing in the record suggests exceptional circumstances. While the effect of the congestion (i.e., the two misdemeanor dismissals) may have been unique, this was merely the inevitable and foreseeable result of the chronic and increasing court congestion. Therefore, no good cause for a continuance was established." (Ibid.) The Cole court also rejected that the record supported the congestion was due to court mismanagement or administrative policy, and even if it did, that was not good cause to avoid dismissal under section 1382. (Cole, at p. Supp. 17.)
In Flores, the court rejected the same argument. In that case, the court rejected the People's argument that the trial court's mismanagement by placing the Hawthorne courts off-limits was grounds for "good cause" for the continuance. It concluded, "The situation in the Riverside Superior Court of insufficient courtrooms and judges to try all criminal matters before the statutory deadlines is in no way novel or limited to this caseit has been the norm for some time now. [Citation.] Because we have already concluded the trial court did not abuse its discretion by not utilizing available noncriminal resources to try Flores's case, we find no court mismanagement whatsoever." (Flores, supra, 173 Cal.App.4th at pp. Supp. 24-25.)
The Flores court concluded, "Lack of resources, not court mismanagement or congestion caused by an exceptional or emergency situation, lay behind the delay in Flores's trial. Under this state of affairs, granting a continuance would have been an abuse of discretion." (Flores, supra, 173 Cal.App.4th at p. Supp. 25.)
The findings in Flores and Cole are correct, and we find no reason to hold otherwise. We have concluded that the trial court properly determined that there were no available courtrooms, and it was not required to utilize the *1394 Hawthorne courts for criminal cases. There is nothing in the record to support that court congestion was caused by the trial court's mismanagement or administrative policy. Consequently, the trial court's denial of the People's request to continue the trial was not an abuse of discretion, and dismissal was necessary in order to avoid a violation of defendant's statutory speedy trial rights.

F. People's Appeal Forecloses Refiling of Charges

We note that since the People have been unsuccessful in the instant appeal, they are foreclosed from refiling the charges against defendant in the lower court.
(9) Section 1238, subdivision (a)(8) provides for a People's appeal from "[a]n order or judgment dismissing or otherwise terminating all or any portion of the action including such an order or judgment after a verdict or finding of guilty or an order or judgment entered before the defendant has been placed in jeopardy or where the defendant has waived jeopardy." However, "[i]f, pursuant to paragraph (8) of subdivision (a), the people prosecute an appeal to decision, or any review of such decision, it shall be binding upon them and they shall be prohibited from refiling the case which was appealed." (§ 1238, subd. (b).)
"An appeal under section 1238, subdivision (a)(8) is an election of remedies." (People v. Dewberry (1974) 40 Cal.App.3d 175, 183 [114 Cal.Rptr. 815].) As such, if the People choose this remedy and the appeal fails, they are "precluded from refiling the case." (People v. Chacon (2007) 40 Cal.4th 558, 565 [53 Cal.Rptr.3d 876, 150 P.3d 755].)[14]
The People made just such an election of remedy in this case. Rather than refile the case, they chose to appeal the first dismissal; they chose not to file a writ of mandate attacking the dismissal, which would not have foreclosed their right to refile.[15] In their desire to have this court weigh in on an issue that had already been reasonably decided by the appellate department of the superior court, they have lost the opportunity to prosecute defendant for the charged offense. Pursuant to section 1238, subdivision (b), they are foreclosed from refiling the charges in this case.

*1395 IV

DISPOSITION
We affirm the dismissal of this case.
Gaut, J., and Miller, J., concurred.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] Defendant was charged along with coperpetrator Scott Lamb, who is not a party to this appeal.
[3] Since the case was dismissed prior to trial, we generate a brief statement of facts from the preliminary hearing. Further, although Jackson was identified as "Phil Jackson" at the preliminary hearing, the information charged that the victim was Jerry Jackson.
[4] On January 29, 2009, this court granted the People's request to augment the record in the instant case with the hearing conducted on September 22, 2008.
[5] Other than what was stated by the trial court, there is no other information in the record regarding the appointment of judges to hear cases at Hawthorne Elementary School. Hence, we must assume the trial court's assessment of these facilities and the purpose for which these judges were assigned is correct.
[6] It appears that the People can refile up until the time that the statute of limitations has run. The statute of limitations here appears to be six years. (See §§ 245, subd. (b), 800.)
[7] In 1959, the Legislature amended section 1050 to include the language in section 681a and repealed section 681a. (Stats. 1959, ch. 1693, §§ 1, 2, pp. 4092-4093.)
[8] Although in Osslo the trial court granted the continuance of the case to be heard in an available criminal department so as not to disrupt a courtroom conducting a civil trial, the reasoning equally applies to the situation here where the trial court denied the continuance. As discussed, post, subsequent to Osslo, the Supreme Court has found that repeated court congestion does not constitute good cause for a continuance, but the court has never changed its interpretation that section 1050 is discretionary.
[9] At oral argument, the People stated that times had changed since Osslo, but until such time as the Supreme Court reconsiders Osslo, we are bound by the decision.
[10] Based on just the facts in this case, it would appear that the AOC allocated resources to Riverside County to alleviate congestion in only civil cases. This is not the case. On our motion, we take judicial notice (see Evid. Code, §§ 452, 459) of the fact that the AOC has also appointed judges to sit in Riverside County to conduct criminal trials and help alleviate court congestion. (See Judicial Council of California, Administrative Office of the Courts, News Release No. 42 (July 26, 2007) (available at [as of July 21, 2009].)
[11] It appears at the time there were no judges hearing cases at Hawthorne Elementary School.
[12] As the People note, this court declined to exercise its discretion to transfer Cole for further consideration, leaving the opinion certified for publication. Further, the California Supreme Court denied their writ of review and request for depublication.
[13] On April 13, 2009, we denied the People's request to transfer Flores to this court, leaving the case certified for publication. The People's writ of mandate/prohibition filed in the California Supreme Court has been denied.
[14] Although this issue was not briefed by the parties, the People conceded at oral argument that section 1238, subdivision (b) precludes refiling a case that has reached decision on appeal.
[15] We note that a writ of mandate is only appropriate if there is no other adequate remedy available. (Phelan v. Superior Court (1950) 35 Cal.2d 363, 366 [217 P.2d 951].) Here, the People did have the option to refile the instant case and obviously had the right to appeal the court's order. Although we do not make a specific finding that this court would have ruled on the writ of mandate, we believe that it would have been appropriate to file such writ attempting to attack the trial court's ruling to avoid the bar in section 1238, subdivision (b).