Filed 11/8/13  Noroski v. Century Nat. Ins. Co. CA4.3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DANIEL A. NOROSKI, | |
| Plaintiff and Respondent, | G047555 |
| v. | (Super. Ct. No. 30-2011-00455936) |
| CENTURY-NATIONAL INSURANCE COMPANY et al., | O P I N I O N |
| Defendants and Respondents; | |
| JIM TRAVIS TICE, | |
| Movant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Jamoa A. Moberly, Judge.  Reversed.

Catanzarite Law Corporation, Kenneth J. Catanzarite and Eric V. Anderton for Movant and Appellant.

Blank and Dahl, Jeffrey M. Blank and Laura A. Dahl for Plaintiff and Respondent.

Haight Brown & Bonesteel, Valerie A. Moore, Jules S. Zeman, Florence H. Gerlitz, and Blythe Golay for Defendants and Respondents Century-National Insurance Company and Kramer-Wilson Company, Inc.

Bryan Cave, Douglas A. Thompson, Brendon K. Barton, and Trevor J. Allen for Defendants and Respondents Bank of America, N.A. and ReconTrust Company, N.A.

\*         \*         \*

A series of unfortunate events led up to the controversy now before us. In November 2008, wildfires wreaked havoc in southern California; the path of destruction included 27995 Alpine Lane, Yorba Linda, California (the Property). An owner of the Property, Ulrike Schneider, died of cancer shortly thereafter in July 2009. Schneider died intestate, unmarried, and without children. In the aftermath of her death, acrimony arose between Schneider's long-term, live-in boyfriend (plaintiff Daniel A. Noroski) and Schneider's family in Germany. A multiplicity of legal actions ensued.

This case began with the March 2011 filing of a complaint by Noroski against four defendants: the insurer of the Property, Century-National Insurance Company, and its parent company, Kramer-Wilson Company, Inc. (collectively, Century-National); Bank of America, N.A. (Bank of America), the beneficiary of a deed of trust recorded against the Property; and ReconTrust Company, N.A. (ReconTrust), the trustee named in the deed of trust. Basically, Noroski was dissatisfied with the resolution of the claim that was filed with Century-National following the destruction of the Property.

In August 2012, Jim Travis Tice (as administrator of the Schneider estate) sought leave to file a complaint in intervention against Noroski and the four defendants.

2

Tice reiterated many of Noroski's claims against the four defendants, but with the added wrinkle that Schneider's estate (and not Noroski) was the true owner of the Property and the right to any insurance proceeds (both those already paid and those still owing). The court denied the motion. We reverse. The court wrongly addressed the merits of some of the claims made in Tice's proposed complaint in intervention rather than addressing his application to intervene pursuant to Code of Civil Procedure section 387.[1]

FACTS

We distill here relevant undisputed facts (at least at the pleading stage), omitting for now the more contentious aspects of the case. We base this recitation of facts on Noroski's complaint, Tice's proposed complaint in intervention, and documents in the record of which the court took judicial notice.

In October 1997, a grant deed was recorded indicating that Noroski, "an unmarried man," received title to the Property from The Estates at Summit Chase, L.P., in exchange for valuable consideration.

Noroski and Schneider cohabited after approximately 1998. They never married.

In December 2003, a quitclaim deed was recorded referencing the Property: "FOR NO CONSIDERATION, DANIEL A. NOROSKI, an unmarried man, AS HIS SOLE AND SEPARATE PROPERTY [¶] does hereby REMISE, RELEASE AND FOREVER QUITCLAIM to ULRIKE SCHNEIDER, an unmarried woman, as a Joint Trustee to hold the property henceforth as [¶] **Daniel A. Noroski and Ulrike Schneider, Joint Tenants**" of the Property.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

In November 2007, a deed of trust was recorded with reference to the Property. The deed of trust secured a loan in the amount of $581,000 provided by Countrywide Bank, FSB (later acquired by Bank of America), to Schneider and Noroski as unmarried joint tenants, with ReconTrust acting as trustee. Signatures purporting to be those of Schneider and Noroski appear on the deed of trust.

At all relevant times, a homeowner's insurance policy from Century-National provided coverage at the Property for a variety of occurrences, including the destruction of the Property by wildfire. On November 15, 2008, a "wildfire known as the Freeway Complex Fire" completely destroyed the Property. A claim was submitted to Century-National in or around December 2008. From December 2008 through October 2009, Century-National paid the total sum of $955,146.03 to Bank of America in connection with the claim on the Property.

Schneider became critically ill with cancer. She died on July 10, 2009, at the age of 46.

PROCEDURAL HISTORY

*Noroski's Complaint*

Filed in March 2011, Noroski's complaint features nine causes of action. The first six causes of action pertain only to Century-National: (1) breach of contract; (2) tortious breach of implied covenant of good faith and fair dealing; (3) fraud (intentional misrepresentation of fact); (4) fraud (suppression of fact); (5) negligent misrepresentation; and (6) negligence.[2] Noroski's claims against Century-National find

---

[2] In March 2012, Noroski dismissed with prejudice an intentional infliction of emotional distress cause of action against Century-National that was initially included in the complaint.

4

fault with Century-National's statements and conduct during the claims handling process, as well as the ultimate compensation provided for the claim. Noroski alleges that, in contravention of the policy and Century-National's representations during the claims process, Century-National "paid *nothing* directly to Noroski for the loss of his home, and *nothing* to Noroski for the purchase of" a new property. As against Century-National, Noroski seeks compensatory damages in excess of $5.8 million, interest, punitive damages, attorney fees, and costs.

Noroski's final three causes of action pertain to Bank of America: (7) quiet title; (8) conversion; and (9) money had and received. ReconTrust was also named as a defendant to the quiet title cause of action. These three causes of action are based on the allegation that Century-National paid $955,146.03 to Bank of America in connection with the claim. Noroski alleges that "Bank of America accepted and deposited [the $955,146.03] in its own account, and failed to credit any of the funds to the outstanding loan balance which was in the sum of $571,610.55 as of March 2009. The loan was thus paid off entirely by March 2009, at which point in time Bank of America had a duty to eliminate Noroski's loan balance, execute a request for a full reconveyance, and deliver it to ReconTrust . . . to cause [the trust deed] to be reconveyed." Noroski also alleges that he continued to make payments on the loan from April 2009 to December 2009 in the aggregate amount of $31,771.98. As against Bank of America, Noroski seeks compensatory damages in excess of $3.5 million, interest, statutory penalties, punitive damages, and costs. Noroski seeks a judgment quieting title in the Property as against Bank of America and ReconTrust.

In sum, the gist of Noroski's complaint is: (1) Century-National did not pay enough on the claim; (2) the insufficient amount paid by Century-National was remitted to Bank of America rather than Noroski; (3) Bank of America withheld the entire amount paid to it by Century-National, even though the amount exceeded the amount owed to Bank of America by Noroski; and (4) Bank of America and ReconTrust

5

failed to convey clear title of the Property to Noroski even though the loan secured by the deed of trust had been paid off (and then some).

*Motions for Leave to Intervene*

Interests affiliated with the Schneider estate bungled their initial attempts to intervene in the instant action. First, on January 5, 2012, Erika Schneider (Ulrike's mother) and Wolfgang Schneider (Ulrike's brother) filed a motion to intervene. This motion was denied without prejudice on January 27, 2012. Erika Schneider filed a second motion to intervene on February 9, 2012. It was denied without prejudice on March 9, 2012.

Tice moved ex parte on June 13, 2012 for leave to intervene, and this application was denied without prejudice on June 13, 2012. Tice moved to intervene on July 6, 2012, but withdrew this motion on August 27.

Finally, on August 27, 2012, Tice filed the noticed motion for leave to file a complaint in intervention that is at issue on this appeal. In his notice of motion and memorandum of points and authorities, Tice argued the court should grant leave to intervene based both on principles of mandatory intervention (§ 387, subd. (b)) and permissive intervention (§ 387, subd. (a)). Tice lodged a proposed complaint in intervention along with the motion.

*Tice's Proposed Complaint in Intervention*

Noroski's complaint indicates he "became the sole owner of the . . . Property on July 10, 2009, when the joint tenancy of Ulrike Schneider in the . . . Property passed to Noroski." Tice's proposed complaint in intervention, on the

6

other hand, alleges Schneider "was the sole owner" of the Property "and the party in interest for the recovery of funds owed and due" on the insurance policy.[3]

Tice reiterates the claims made by Noroski against Century-National in causes of action for (1) breach of contract, (2) tortious breach of implied covenant of good faith and fair dealing, (3) fraud (intentional misrepresentation of fact), (4) fraud (suppression of fact), (5) negligent misrepresentation, and (6) negligence. Of course, the causes of action are tailored to allege wrongs committed against Schneider rather than Noroski. Tice also includes a cause of action for intentional infliction of emotional distress against Century-National; a similar action initially appeared in Noroski's complaint but was dismissed with prejudice months earlier.

As with Noroski's complaint, causes of action for quiet title, conversion, and money had and received are included in Tice's proposed complaint in intervention. The factual allegations in these causes of action are similar, with two important distinctions. First, Tice asserts that Schneider's estate (not Noroski) is the sole current owner of the Property. Second, Tice includes Noroski as a defendant to the three causes of action, alleging the possibility that Noroski had actually received some of the insurance money paid to Bank of America (e.g., "which sums Intervenor believes may have been improperly paid in whole or in part to NOROSKI").

The proposed complaint in intervention also includes three new causes of action against Noroski, Century-National, and Bank of America: (11) financial elder and dependent adult abuse; (12) declaratory relief; and (13) an accounting. The dependent abuse claim asserts that Schneider was unable to protect her rights at the end of her life as she was taken advantage of by defendants (including Noroski) in various ways. The

---

[3] This allegation differs markedly from the initial proposed complaint in intervention, wherein Erika and Wolfgang Schneider alleged that Noroski and Schneider were co-owners of the Property and Schneider's estate was entitled to "not less than one half of all damages sought" by Noroski.

declaratory relief claim nicely sums up Tice's position, in that he "seeks a declaration and judgment that all of the Policy proceeds due and payable are payable to the Estate as against any claims by NOROSKI, that the Estate has sole title to the . . . Property, that amounts held by BANK OF AMERICA are payable solely to [Tice] and if already paid to NOROSKI then BANK OF AMERICA must pay [Tice] and seek reimbursement or not from NOROSKI . . . ."  The proposed complaint in intervention prays for unspecified compensatory damages, special damages, statutory damages, punitive damages, attorney fees, costs, and declaratory relief.

*Ruling*

On September 21, 2012, the court denied Tice's motion to intervene by way of a minute order, which did not explain the ruling.  When asked to explain the basis for the denial at the hearing, the court replied "[i]t's a statute of limitations issue."  Tice appealed the order in a timely fashion.

DISCUSSION

An order denying leave to intervene is appealable and is reviewed under the deferential abuse of discretion standard.  (*Noya v. A.W. Coulter Trucking* (2006) 143 Cal.App.4th 838, 841-842.)  "Intervention is mandatory (as of right) or permissive.  A nonparty has a right under . . . section 387, subdivision (b) to intervene in a pending action 'if the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by existing parties.'"  (*Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 547, fn.

8

omitted; see § 387, subd. (b) [application for mandatory intervention must also be "timely"].)[4]

 Tice asserts both an ownership interest in the Property and an interest in the proceeds from the insurance claim made as a result of the destruction of the Property in the November 2008 fire. The gravamen of the proposed complaint in intervention, therefore, falls squarely within the parameters of mandatory intervention, in that Tice "*claims an interest* relating to the property or transaction which is the subject of the action." (§ 387, subd. (b), italics added.)[5]

---

[4]  With regard to permissive intervention, "[a] third party may intervene (1) where the proposed intervenor has a direct interest, (2) intervention will not enlarge the issues in the litigation, and (3) the reasons for the intervention outweigh any opposition by the present parties. [Citation.] 'The purpose of allowing intervention is to promote fairness by involving all parties potentially affected by a judgment.'" (*Lindelli v. Town of San Anselmo* (2006) 139 Cal.App.4th 1499, 1504; see § 387, subd. (a) ["Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or be demanding anything adversely to both the plaintiff and the defendant, and is made by complaint, setting forth the grounds upon which the intervention rests, filed by leave of the court and served upon the parties to the action or proceeding"].)

[5]  Indeed, Noroski's lawsuit includes a quiet title cause of action, which separately authorizes any party with a claim to the Property to appear in the case (although as a defendant, not a plaintiff asserting additional causes of action). (§ 762.050 ["Any person who has a claim to the property described in the complaint may appear in the proceeding. Whether or not the person is named as a defendant in the complaint, the person shall appear as a defendant"].) Furthermore, principles of compulsory joinder also seem relevant: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if . . . (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined,

9

*Contentions Regarding Merits of Proposed Complaint in Intervention*

Based on the opposition memoranda filed at trial and Century-National's appellate brief,[6] the primary argument for refusing Tice's claim of mandatory intervention is the purported lack of merit of the causes of action in the proposed complaint in intervention. According to respondents, it is self-evident that the December 29, 2003 quitclaim deed (of which the court took judicial notice)[7] created a joint tenancy between Noroski and Schneider. It is black letter law in California that a joint tenancy features the right of survivorship. (*Estate of Mitchell* (1999) 76 Cal.App.4th 1378, 1385.) Therefore, according to respondents, Tice has no interest in the Property because Noroski took sole ownership of the Property as of the date of Schneider's death. This is sound logic so far as it goes. But Tice claims the quitclaim deed (which is not exactly a model of clarity) actually deeded the entire Property to Schneider: "The only conveyance made by the deed is from . . . Noroski to Ulrike Schneider with no interest in the title held for the benefit of . . . Noroski and no interest in the property being transferred to . . . Noroski. An individual cannot hold property as joint tenants for two persons. Additionally, based upon the face of the quitclaim deed's language there is no unity of interest . . . , no unity of time . . . , and no unity of title . . . ." It does not appear the court intended to rule on the merits of Tice's claim to the Property by denying the motion to intervene.

---

the court shall order that he be made a party." (§ 389, subd. (a).)

[6] Neither Noroski, Bank of America, nor ReconTrust filed a substantive respondent's brief in this appeal. Noroski filed a joinder in Century-National's brief.

[7] "FOR NO CONSIDERATION, DANIEL A. NOROSKI, an unmarried man, AS HIS SOLE AND SEPARATE PROPERTY [¶] does hereby REMISE, RELEASE AND FOREVER QUITCLAIM to ULRIKE SCHNEIDER, an unmarried woman, as a Joint Trustee to hold the property henceforth as [¶] **Daniel A. Noroski and Ulrike Schneider, Joint Tenants**" of the Property.

Tice also seeks damages from Century-National, Bank of America, and Noroski based on harm Schneider allegedly suffered as a result of the fire and the claims handling process. The parties offer dueling citations to case law for their respective positions. According to Tice, the Schneider estate owns all (or at least some) of the proceeds from the Century-National insurance policy and damages claims against the defendants because "[i]t is a principle of long standing that a policy of fire insurance does not insure the property covered thereby, but is a personal contract indemnifying the insured against loss resulting from the destruction of or damage to his interest in that property." (*Russell v. Williams* (1962) 58 Cal.2d 487, 490.) In other words, even if the Property was transferred to Noroski at Schneider's death, Schneider still is entitled to at least some of the insurance proceeds because the Property was destroyed before Schneider's death. Respondents, on the other hand, claim that the right to payment under the insurance policy is property of the joint tenancy, and therefore Noroski. Century-National notes that "the proceeds of joint tenancy property, in the absence of contrary agreement, retain the character of the property from which they are acquired." (*Estate of Zaring* (1949) 93 Cal.App.2d 577, 580.) Once again, it does not appear that the court intended to rule on the merits of these contentions in denying the motion to intervene.

Century-National also raised statute of limitations defenses to the causes of action naming it as defendant in the proposed complaint in intervention. Insurance Code section 2071, subdivision (a), sets forth "the standard form of fire insurance policy for" California. Under the heading "Suit," the standard form provides that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity . . . unless commenced within 12 months next after inception of the loss." (Ins. Code, § 2071, subd. (a).) This one-year limitations period on insurance actions has "'long been recognized as valid in California.'" (*Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 683.) The Century-National policy at issue in this case includes a similar clause: "Suit must be filed within one year after the date of loss."

11

According to the policy, "[d]ate of loss means the date, during the policy period, that damage to property covered by the policy is sustained and manifested."

The Property was destroyed November 15, 2008, which (according to Century-National's analysis) suggests that the statute of limitations for a lawsuit against Century-National ordinarily would expire on November 15, 2009.[8] Schneider died July 10, 2009, less than one year after the date of loss. "[A] cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." (§ 377.20, subd. (a).) "If a person entitled to bring an action dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced before the expiration of the later of the following times: [¶] (a) Six months after the person's death. [¶] (b) The limitations period that would have been applicable if the person had not died." (§ 366.1.) Thus, according to Century-National, Schneider's estate was entitled to an extension of the statute of limitations under section 366.1 (perhaps to January 10, 2010),[9] but not through 2012 (when the various efforts at intervention were made in this action).

Tice asserted a variety of theories to avoid a statute of limitations defense (e.g., the record is unclear as to when claims were submitted and denied, the statute of limitations should not begin running until denial of the claim occurs, Noroski's filing of his complaint was in effect a filing of Schneider's claims, the delayed discovery rule should apply, equitable tolling should apply). (See *Prudential-LMI Com. Insurance v. Superior Court*, *supra*, 51 Cal.3d at pp. 684-700 [discussing these theories].) The court, however, denied the motion to intervene on statute of limitations grounds (even though a

---

[8] It is unclear from the record whether Century-National is asserting a statute of limitations defense against Noroski, whose complaint in this action was filed in March 2011.

[9] Century-National's brief suggests that Schneider's estate needed to bring claims "by July 10, 2010 at the latest."

statute of limitations defense was not raised by Noroski, Bank of America, or ReconTrust).

*Court Abused its Discretion by Denying Motion on Statute of Limitations Grounds*

The court abused its discretion by denying Tice's motion to intervene on the basis that Tice's claims against Century-National were barred by the statute of limitations. By ruling on the merits of Tice's claims against Century-National, the court put the cart before the horse. A statute of limitations defense against a proposed intervener's claims typically should be entertained after intervention occurs. (See *Basin Construction Corp. v. Department of Water & Power* (1988) 199 Cal.App.3d 819, 824 [statute of limitations defense addressed on demurrer; "it is clear that the trial court, by its ruling on the motion to intervene, did not intend to foreclose defendant from raising the defense of the statute of limitations and apparently excluded such a consideration from the concept of a 'timely application'"]; *Andersen v. Barton Memorial Hospital, Inc.* (1985) 166 Cal.App.3d 678, 680, 685 [judgment affirmed after demurrer sustained to complaint in intervention on statute of limitations grounds]; *DeMeo v. St. Francis Hosp.* (1974) 39 Cal.App.3d 174, 176-178 [judgment against intervener on statute of limitations grounds entered after filing of complaint in intervention and subsequent hearing on merits].) Indeed, one federal district court erred when it denied a motion to intervene on statute of limitations grounds. (*Saxton v. General Motors Corp.* (6th Cir. July 16, 1985, No. 83-3544 1985) 1985 U.S.App.Lexis 14248) ["making the right to intervention depend on the strength of the proposed intervenor's case on its merits" is error unless it is "absolutely clear" that claim is barred].)[10]

---

[10] The Federal Rules of Civil Procedure are similar to section 387 in that they provide for both intervention as of right — including when a person "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest"

13

The intervention process should not be utilized to assess in a summary fashion the merits of an intervener's claims. (See *Jun v. Myers* (2001) 88 Cal.App.4th 117, 119, 125 [where buyer alleges wrongdoing by receiver in connection with sale of defendant's property, trial court does "not have discretion to deny both the motion to sue [a receiver] and the motion to intervene by summarily determining that [intervenor's] claim lacked merit"].) "An application for intervention cannot be resolved by reference to the ultimate merits of the claim the intervenor seeks to assert unless the allegations are frivolous on their face." (*Turn Key Gaming, Inc. v. Oglala Sioux Tribe* (8th Cir. 1999) 164 F.3d 1080, 1081; see also *Oneida Indian Nation of Wis. v. State of N.Y.* (2d Cir. 1984) 732 F.2d 261, 265 [applying same rule].)

There are sound reasons for this rule. First, by transforming a motion to intervene into a demurrer on the proposed complaint in intervention, a court upends ordinary procedural protections afforded to the proponent of a cause of action. The proposed intervener is forced to respond with reply papers rather than opposition papers, a distinction that could affect both the time to respond (§ 1005, subd. (b) [at least seven court days after receiving a motion for an opposition, versus at least four court days after receiving an opposition for a reply]) and the page length of the memorandum of points and authorities (Cal. Rules of Court, rule 3.1113(d) [15 versus 10 pages]). This diminution in procedural rights is particularly troublesome in light of the potential res judicata effect of the court's ruling, an effect that Century-National is advocating for in this case.

Second, it is folly to address the merits of multiple causes of action against multiple parties in a motion to intervene (where the ruling is binary, in that the court must grant or deny the proposed intervenor's request to become a party to the action) as opposed to reserving consideration of the merits until a demurrer or other appropriate

(Fed. Rules Civ.Proc., rule 24(a)(2), 28 U.S.C.) — and permissive intervention (*id.*, subd. (b)(2)).

14

motion (where the ruling may grant relief as to certain parties or causes of action without dismissing the entire pleading from the action). The court did not even purport to rule on the merits of Tice's claims against Noroski, Bank of America, and ReconTrust. The court's methodology is problematic given Tice's facially valid claim to mandatory intervention under section 387, subdivision (b), regardless of the validity of Tice's claims against Century-National.

By this decision, we do not mean to suggest that a proposed intervener is entitled to intervene even if their proposed complaint in intervention is clearly "frivolous" in its entirety. (*Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, *supra*, 164 F.3d at p. 1081; see also *In re Yokohama Specie Bank* (1948) 86 Cal.App.2d 545, 554 ["It would be a queer rule indeed that would require a court to permit any one to delay and impede a legal proceeding when he has no possible chance of gaining by his intervention"].) For instance, an ex-husband may not intervene in an ex-wife's quiet title action when title was already litigated to a conclusion as between the former spouses in a different action, and the attempt at intervention was really an attempt to relitigate a final judgment. (*Muller v. Robinson* (1959) 174 Cal.App.2d 511, 512-513, 515-516.) And in a bank liquidation action in which potential claimants are subject to specific statutory claims procedures that act as a "substantive condition precedent" to participation in the liquidation action, a claimant who demonstrably did not submit a claim cannot intervene in the action, particularly at a juncture in the liquidation process that would cause further delay of the distribution to those with cognizable claims. (*In re Yokohama Specie Bank*, *supra*, 86 Cal.App.2d at pp. 546-551, 553-555.) Indeed, in some cases, the statute of limitations may be clearly dispositive as to the entire proposed complaint in intervention such that it justifies denial of the motion to intervene. (See, e.g., *Nat'l Trust v. FHA* (W. Dist. Kent. Aug. 13, 2010, No. 3:10-CV-7-H) 2010 U.S. Dist. LEXIS 83080; *Grand-*

15

*Pierre v. Montgomery County* (Ct. App. Md. 1993) 627 A.2d 550, 555.) We merely hold that Tice's proposed complaint in intervention was not eligible for summary treatment.[11]

There is no alternative ground to affirm the court's order, as the court's ruling did not address any aspects of section 387, subdivision (b). The court did not find that Noroski "adequately represented" Tice's interests or that "the disposition of the action [will not] as a practical matter impair or impede [Tice's] ability to protect [the Schneider estate's] interest." (§ 387, subd. (b).) Our review of the record (as well as our consideration of the related probate case mentioned above) suggests that Noroski has taken positions directly adverse to the Schneider estate, thereby requiring Tice to participate in this action if he hopes to protect the estate's interest. The court did not address whether Tice submitted a "timely application" to intervene. (See, e.g., *Northern Cal. Psychiatric Society v. City of Berkeley* (1986) 178 Cal.App.3d 90, 109 ["no excuse for the tardiness of this application for intervention, since the Coalition had been involved in the lawsuit from the outset"].)[12] This may be a closer question, but much of the delay in bringing a cognizable application to intervene relates to a lengthy dispute over the appointment of an administrator of the estate, a delay that can be attributed in part to Noroski. Regardless, there was no justification cited by the court for its denial of the

---

[11] Some non-California state court opinions might be read to suggest that a court is always permitted to inquire into the merits of the proposed complaint in intervention. (See, e.g., *Solon v. WEK Drilling Co., Inc.* (N.M. 1992) 829 P.2d 645 ["it is certainly *permissible* for the court to scrutinize the proffered complaint to see whether it states a cause of action"].) Obviously, to the extent any out-of-state cases are deemed to be in conflict with our opinion, we disagree with such cases.

[12] Century-National suggests in a supplemental letter brief that the phrase "upon timely application" (§ 387, subd. (b)) should be read to incorporate, as a matter of course, an examination of whether the causes of action in the proposed complaint in intervention satisfy the applicable statute of limitations. This interpretation ignores the plain text of the statute, which refers to the timeliness of the *application*, not the timeliness of the substantive causes of action.

16

motion to intervene outside its view that Tice's claims against Century-National were not filed within the statute of limitations.

Based on his claim to an interest in the Property and the insurance proceeds, Tice was entitled to mandatory intervention under section 387, subdivision (b). We therefore reverse the court's order. We offer no view on the merits of Tice's various causes of action, including the question of whether Tice's claims against Century-National are barred by the statute of limitations.

## DISPOSITION

The order denying intervention is reversed. Tice's pending request for judicial notice is denied. In the interests of justice, the parties shall bear their own costs on appeal.

IKOLA, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

ARONSON, J.

17